Poulk and Another *v.* Slocum.

If in trespass for false imprisonment against a magistrate, he plead in justification, that the arrest, &c. was by virtue of a warrant issued by him against the plaintiff as the father of a bastard child, on the complaint of the overseers of the poor, and show that the child was not then born, or omit to state that the complaint was reduced to writing, or that the mother had failed to prosecute for the child's maintenance, or that the warrant was in due form,—the plea is insufficient.

An action of trespass lies against a magistrate, for an imprisonment by virtue of a warrant in such case, issued by him without a complaint authorising it.

A constable in his justification of an imprisonment under a magistrate's warrant, must show that the magistrate had jurisdiction of the subject-matter, and that the warrant on its face was legal.

If the magistrate who issues a warrant, and the officer who executes it, be sued in trespass by the party arrested, and join in a plea of justification,—the plea must be a good defence as to both, or it is not good as to either.

Nov. Term, 1834.

POULK v. SLOCUM.

Wednesday, November 26.

ERROR to the *Boone* Circuit Court.

STEVENS, J.—*John Slocum* declared against *John S. Poulk, John Pauly, John Welchel,* and *James Turner,* in an action of trespass, assault and battery, and false imprisonment. The declaration contains two counts, both of which are in substance the same.

The defendants pleaded jointly two pleas,—1. Not guilty. 2. A special plea in bar, alleging that on, &c. at, &c. *John Burnham* and *Abel Pennington,* overseers of the poor, &c. made complaint to him the said *John S. Poulk,* he being a justice of the peace, &c., that one *Bethany Brissey,* an unmarried woman, was pregnant with child, which, if born, was likely to be a bastard; that the said *Bethany,* and the said child if born, were likely to become a public charge, &c.; and that said *John Slocum,* a married man, was the supposed father of the said child; and directed him the said *Poulk,* as such justice of the peace, to issue his process against said *Slocum* to appear, &c.; that he the said *Poulk,* as such justice of the peace, &c. did issue his warrant under his hand and seal directed to said *Pauly,* he being a constable, &c., commanding him to take said *Slocum,* &c. and bring him before him, the said *Poulk,* &c. to answer said complaint, &c.; and that he the said *Pauly,* as such constable, in obedience to the command of said warrant, did arrest, keep, and detain, &c. the said *Slocum,* &c.; and that he the said *Pauly* did, as such constable, command and order the said *Welchel* and *Turner* to aid and assist him, as such constable, in so arresting, keeping, and detaining him the said *Slocum;* and that they the said *Welchel* and *Turner* did, in obedience to the command of him the said *Pauly,* as such constable as aforesaid, aid and assist in arresting, keeping, and detaining him the said *Slocum,* &c.

On the plea of not guilty, an issue was joined to the country. The second plea was demurred to, and the demurrer sustained by the Court. The issue to the country was tried by a jury; *Welchel* and *Turner* were acquitted; *Poulk* and *Pauly* found guilty; damages assessed in favour of the plaintiff, &c.; and final judgment was rendered.

To the judgment and proceedings in this case, several objections are raised.

First, It is said that the demurrer to the defendants' plea of justification should have been overruled. The causes of

demurrer to this plea are specially set forth and stated, and among several others are the following:—1st, The plea does not show that the complaint on which the warrant issued, was either under oath or in writing; 2dly, It is expressly shown by the plea, that the supposed bastard child was not born at the time of the arrest; and 3dly, The plea does not show, that the suit was instituted by the overseers of the poor in behalf of their county; nor is it shown that the mother had neglected to bring a suit, or had commenced a suit and failed to prosecute it to final judgment.

Before we look into the plea, it will be proper to dispose of two objections raised by the plaintiffs in error. They argue that the judgment on this demurrer should have been for the defendants, and not for the plaintiff. 1. Because the first count of the declaration is defective. It is a general principle in pleading, that a demurrer looks through the whole record, and locates upon the first error. But it must not be forgotten, that it only reaches substantial defects, that is, such defects as are not cured by pleading to the declaration; for by pleading to the declaration all defects are cured, except such as would be good on a motion to arrest the judgment after verdict. Gould, 469, 474. That this count contains no such defects, is obvious and without doubt. 2. Because the plaintiff mistook his remedy; that his action should have been *case* and not *trespass*. If this objection is to be determined by the averments in the declaration, it must fail. The plaintiffs in error, however, insist that the whole record must be taken together; that their special plea forms a part of the record, and by the statements it contains, it is clearly shown that *trespass* will not lie; and that plea being demurred to, must be taken for true. We shall not stop to inquire, whether, if the plea were good and available in law, it could be used to that effect, but will simply as to that say, that a defective plea is not sufficient for that purpose. In general, a demurrer does admit the truth of all facts that are well pleaded, but it does not admit the truth of those that are not well pleaded. If, then, the plea under consideration is not a sufficient bar in law to the plaintiff's action, the facts stated are not admitted to be true. This at once brings us to the merits of the plea.

We will first examine this plea in reference to the justice of the peace. The defence set up is bottomed on two sections in the act respecting illegitimate children. R. C. 1831, p. 285.

Nov. Term, 1834.

POULK
v.
SLOCUM.

The 1st section of that act provides, "that on complaint made to any justice of the peace in this state, by any unmarried woman resident therein, who shall hereafter be delivered of a bastard child, or be pregnant with a child which, if born, also may be a bastard, accusing any person of being the father of said child, the justice shall take such accusation in writing, and thereupon issue his warrant directed to the sheriff, or one of the constables of his county, commanding him forthwith to bring such accused person before such justice to answer to such complaint." In this provision, jurisdiction and power are given to the justices of the peace to issue their warrants, &c., on the happening of certain things, and not otherwise. The facts are, the complaint of an unmarried woman who has either had, or is pregnant with, a bastard child, and who resides in the state, accusing some person with being the father of the child, and this accusation must be reduced to writing. This is the only provision that gives, in express terms, any authority or jurisdiction to justices of the peace; and it is not contended that the plea is either within the spirit or letter of this enactment.

The 2d section of that act provides, that, "when any woman has a bastard, and neglects to bring suit for the maintenance of such child, or commences a suit and fails to prosecute to final judgment, the overseers of the poor in any township interested in the support of any such bastard child, when sufficient security is not offered to save the county from expense, shall bring forward a suit in behalf of the county, against him who is accused of begetting such child, or may take up and prosecute a suit begun by the mother of the child." The plaintiffs in error contend, that this 2d section is merely a continuation of the 1st as to the subject-matter, and that the words "any woman," mean any such woman as is described in the 1st section; and that the suit spoken of in the 2d section, is nothing more than the making a complaint to a justice of the peace, &c. as is provided in the 1st section; and that the suit, which the overseers of the poor are authorised on certain contingencies to bring, is simply going before a justice of the peace and entering the complaint against the accused, in manner and form as the 1st section provides that the mother of the child may do. Admitting this to be the true reading and construction of this section, Have the plaintiffs in error, by their plea, brought themselves within its enactments?

They certainly have not.   The act requires that the complaint should be reduced to writing, but that was not done in this case. The defendant in error argues with some degree of plausibility, that the complaint should not only be reduced to writing, but should also be sworn to, and relies upon the constitution to sustain him.  To this it may be answered, however, that the statute does not require an oath, and we do not think that this is one of the cases to which the constitution extends; but the statute does expressly require that the complaint shall be reduced to writing.

It was said in argument, that the allegation in the plea of the overseers of the poor having made a complaint to the justice of the peace, is sufficient; that it must be presumed to have been a legal and sufficient complaint.   It is perhaps correct, that if the overseers of the poor are by the statute authorised to make such a complaint, and to cause a warrant to issue, that statement might be sufficient on the face of the warrant to sustain the warrant; but when an officer undertakes to justify under the process of a Court of inferior, special, or limited jurisdiction, he must show by direct and certain allegations that the process was within the jurisdiction, and not leave it to be supplied by intendment and inference.  In this case, a justice of the peace has no general jurisdiction of the subject-matter, and he can only exercise such jurisdiction by virtue of a certain complaint, specially described by statute, and that complaint must be reduced to writing, &c.; and that special and limited jurisdiction is given by one single section of the act above recited, and is unaided by either the common law, or by the statute defining his general powers and duties; and the power of the overseers of the poor to interfere in cases of bastardy, is given by another section of the same statute, and is more special and limited than that of the justice of the peace.   Neither the justice of the peace, nor the overseers of the poor, can do anything by implication; they are limited to the express power given; and when they attempt to justify the assault, arrest, and imprisonment of a fellow-citizen, under such authority, they must in direct, clear, and unequivocal terms, bring their acts within that authority.

If the overseers of the poor have the power thus to interfere in cases of bastardy, and cause such complaints to be made, &c. the statute is express that it is not until after the child is born; this plea expressly shows that the child in this case was not

born. Again, the statute is express that the overseers of the poor shall not interfere, unless the mother fail to prosecute, &c.: this plea contains no averment that the mother had failed in any way to prosecute. There are various other defects in the plea, but it is not necessary to notice them all specially; but it may perhaps be proper to notice one other, that is respecting the warrant which was issued by the justice: the plea has no averment to show that the warrant was a legal writ on its face, or was in due form of law.

This plea is in every point of view defective, and does not bring the justice of the peace within the jurisdiction he has assumed, and is therefore, as to him, no bar to the action, and cannot be taken as part of the record to show that the action should have been *case* and not *trespass*.

This point respecting the misconception of the action, was argued with great ability and skill. It was urged with much plausibility, that the action should have been *case* and not *trespass;* and that the distinction is this,—When the immediate act of imprisonment proceeds from the justice of the peace himself, trespass is the remedy, but where the imprisonment by the justice is in consequence of information from another, an action on the case is the proper remedy. The case of *Morgan* v. *Hughes* is cited to sustain this position. The naked principle here stated may in some cases be good law, if properly applied, but as it appears to be intended to be used in this case, it is not sound doctrine. The case of *Morgan* v. *Hughes*, 2 T. R. 225, was this,—*Hughes*, the justice, falsely and maliciously issued a warrant against *Morgan* for larceny, without any charge or accusation being made by any one against him, stating on the face of the warrant that one *Davies* had made the charge. The Court said that the justice was liable in trespass, because the imprisonment proceeded from him without any lawful authority, but, said the Court, if *Davies* had really made a legal charge of larceny against *Morgan*, then the justice would have had legal authority to issue the warrant, and would not have been liable to the action of trespass; and it may be further said, if *Davies* had really made a legal charge against *Morgan* of larceny, and the justice had honestly issued his warrant on that charge, he would not have been liable to any action; but if the charge had been false and without probable cause, and the justice, although cognizant of that fact, still

issued his warrant, he would have been liable to an action on the case for malicious prosecution. Whenever the suit or prosecution is before a Court that has jurisdiction of the subject-matter, and is as to forms of law legal, the action of trespass will not lie; the action must be case. But to say that a justice of the peace is not liable in an action of trespass, in any case where a complaint has been made to him by another, cannot be law. To screen the justice of the peace, the complaint must be a legal one, and such a one as will authorise him, under the law, to act upon it.

Another position taken by the plaintiff in error is, that although the plea may be insufficient to protect the justice, yet it is sufficient to protect the constable and those who aided him; that the constable was a mere ministerial officer and was bound to execute the writ, unless it appeared upon its face that the justice had no jurisdiction. This is somewhat a vexed question. There is much contradiction in the books about what an officer is required to show, to justify himself in the execution of process.

In the case of *Lucking* v. *Denning*, Salk. 201, much was said upon the subject. That case was this,—An action on the case was brought against a sergeant at mace for an escape, by virtue of a process of the Court of the sheriffs of *London*, in an action of debt upon a bond sued there. The jurisdiction of the Court extended to all actions of debt upon contracts, bonds, &c., if made within the city. In proof upon the trial of the case, it was developed that the bond was not made in the city. The Court after much consultation ruled,—1. Where an inferior Court is confined to certain persons, as the *Marshalsea* was to those of the household, if it is not averred on the face of the proceedings, that the person suing is qualified, and is within the jurisdiction, the proceedings are *coram non judice* and void, and the officers all liable. 2. When the inferior jurisdiction is confined to some particular thing, and the suit is for something else, the proceedings are *coram non judice* and void, and the officers all liable. 3. But where the jurisdiction is limited to causes of action, arising in a particular limited territory, the Court may award process, and the officers may execute it, unless it appear on the face of the proceedings that the cause of action arose out of the jurisdiction. The officers are not bound to inquire where the cause of action arose.

In the case of *Smith* v. *Shaw*, 12 Johns. Rep. 257, the Court says that the general rule is, that where the subject-matter of the suit is not within the jurisdiction of the Court, every thing done is absolutely void, and the officers become trespassers; but where the subject-matter is within the jurisdiction generally, and the want of jurisdiction applies only to the particular person or place, the officer is excused, unless the want of jurisdiction appears on the face of the process. In the case of *Perkin* v. *Proctor*, 2 Wils. 382, the Court decided that if a commission of bankruptcy is improperly sued out, on a false statement of facts set forth in the petition of those who apply for the commission, against a person who is not liable to be declared a bankrupt, not being a trader, the commission is void, and trespass will lie against the persons who petitioned for the commission, but not against the ministerial officers. But if the petitioners had not stated in their petition the necessary facts to bring the case within the law, and authorise a legal grant of a commission, and a commission had been granted without the necessary facts to authorise it being stated, the whole proceedings would be *coram non judice* and void, and the ministerial officers liable. In the case of *Ladbroke* v. *Crickett*, 2 T. R. 649, it was said, that if it appeared upon the face of the proceedings and process that the Court had jurisdiction, the ministerial officers would be justified. Vide also *Shergold* v. *Holloway*, 2 Str. 1002.

In the case of *Savacool* v. *Boughton*, 5 Wend. Rep. 170, the subject is argued at great length, and the Court says that it is well settled,—1. That if the process upon its face is void for want of jurisdiction in the Court, of either the subject-matter or the person, it is *coram non judice*, and affords no protection to any one. 2. That where the Court has general jurisdiction of the subject-matter and the person, and the process is regular on its face, the officers are protected. 3. That several respectable authorities exist, where it is said that if Courts of limited jurisdiction transcend their limits, their proceedings are *coram non judice* and void, and all concerned are trespassers.

These authorities have been mentioned for the purpose of presenting something like a chain of similar decisions, as to their principal details. The books, however, contain numerous adjudications on the same subject, all more or less differing from each other in many particulars. The great leading principle

may, perhaps, be said to be this,—When a ministerial officer justifies under authority, he must clearly show that authority. He must show that he acted under a Court having jurisdiction of the subject-matter, &c.; that the process or command which he executed, was on its face legal, and such as the Court had power to legally issue; and that he did no more than execute the command in a legal manner.

If the plea in this case be tested by this rule, it cannot justify the constable. This plea does not show that the warrant was legal upon its face, or was such a warrant as a justice of the peace was legally authorised to issue under any circumstances. The warrant in cases of bastardy must issue in the name of the state, &c. *Woodkirk* v. *Williams*, 1 Blackf. Rep. 110. It is not shown that this warrant was in the name of the state. In all cases where an officer justifies under process, the plea must aver that the process was in due form of law; but this plea contains no such averment. In all warrants issuing in the name of the state, the true substance of the charge on which it is issued, must be set forth in the warrant, upon which to bottom and authorise the command to arrest the person, &c. This plea, however, contains no averment showing that the warrant, in this case, contained any statement of any complaint whatever, or that the command to arrest the accused was bottomed upon a legal complaint of any description. It is impossible, from the face of this plea, to form even a conjecture, whether the warrant had any sufficient legal form or substance in it: it cannot therefore protect the officer. But if it did, it could not be available, unless it protected the justice of the peace also. It is a principle in pleading, to which there cannot be any exception, that where several defendants join in pleading in bar, if the plea is bad as to one defendant, it is bad as to all; for the Court can never sever the plea, and say that one defendant is guilty and that another is not, when they all put themselves on the same terms. 1 Chitt. Pl. 545.— *Moors* v. *Parker et al.* 3 Mass. Rep. 310.—*Marsteller et al.* v. *M'Clean*, 7 Cranch, 156.—*Parsons* v. *Loyd*, 3 Wils. 341.— *Collett* v. *Keith*, 2 East, 260.—1 Saund. Rep. 28.

In this case the plea is joint, and being as to one insufficient, is insufficient as to all.

It is said that the judgment respecting costs is erroneous. As to so much of the judgment as relates to the costs recovered by

the two defendants who were acquitted, there may be perhaps a slight error, but as it is in favour of the plaintiffs in error, and does not vitiate the judgment against them, they cannot assign it for error.

*Per Curiam.*—The judgment is affirmed with 1 *per cent.* damages and costs.

*A. S. White* and *R. A. Lockwood,* for the plaintiffs.

*J. B. Ray,* for the defendant.