No. 60.—JEREMIAH WILCHER, administrator &c. plaintiff in error, *vs.* JOHN HAMILTON, defendant in error.

[1.] Justices' Courts may revive their judgments.

[2.] In reviving a judgment in a Justices' Court, it is not necessary that the Justice presiding, should be the same Justice who presided when the judgment was rendered.

[3.] It is not necessary that the applicant, to revive a Justices' Court judgment, should accompany his application with an *affidavit*, that the judgment has not been satisfied.

[4.] In reviving, interest is to be counted during the period of dormancy, as well as for the rest of the time.

*Certiorari*, from Marion Superior Court. Decision by Judge CRAWFORD, March Term, 1854.

Objections were made to the revival of a judgment in a Justices' Court, in Marion county, on the grounds:

1st. That not being an enrolled judgment, it could not be revived by *scire facias*.

2d. That if it revived at all, it must be done by the Justice who issued it.

3d. That before it can be done, the plaintiff must make affidavit that it has not been paid.

4th. That while dormant, the judgment did not bear interest.

The Justices' Court over-ruled the objections. The Superior Court, on *certiorari*, affirmed the decision, and this is here assigned as error.

W. D. ELAM, for plaintiffs in error.

BLANFORD & CRAWFORD, for the defendant.

*By the Court.*—BENNING, J. delivering the opinion.

By the Common Law, "writs of execution must be sued out within a year and a day after the judgment is entered; otherwise, the Court concludes, *prima facie*, that the judgment is satisfied and extinct"; but, "the plaintiff may still bring an action of debt, founded on this dormant judgment, which was the only method of revival allowed by the Common Law". (3 *Black.* 421.  *Co. Litt.* 290.)

The Statute of *West.* 2, 13 *Edw'd. I, c.* 45, gives, as to certain judgments, viz : enrolled judgments, another method of revival; that is to say, a *scire facias*, for the defendant to show cause why the judgment should not be revived, and execution had against him.  (*Bac. Abr. "Executions"*, (*H.*) This method does not extend beyond *enrolled* judgments.

The Common Law method, namely : by action of debt, extends to *all* judgments, whether enrolled or not enrolled.  It, therefore, extends to judgments of Justices' Courts.

In 1812, the Legislature of Georgia made a law in these words : "No part of the Judiciary Laws of this State, shall be so construed, as to require the renewal of any judgment, as heretofore practiced, or in any other manner whatever".  (*Cobb's Dig.* 496.)  This Act includes the judgments of Justices' Courts, for the Judiciary Law of the State had been so construed as to require the renewal of said judgments, if unenforced for a year and a day, by action of debt.

The effect of this Act, was to repeal both the Common Law and the Statute of *West.* 2, 13 *Edw. I*, and to give to all judgments unlimited duration, without the intervention of *scire facias*, or action of debt.  This effect equally extended, therefore, to the judgments of Justices' Courts, which are *never enrolled* or recorded, as to the judgments of the Superior and Inferior Courts, which always are, or always should be recorded.

In 1823, the Legislature again spoke and said : "*All* judgments that have been obtained since the said 19th day of De-

cember, 1822, and *all* judgments that may be hereafter rendered in any of the Courts of this State, on which no execution shall be sued out, or which executions, if sued out, no return shall be made by the proper officer, for executing and returning the same, within seven years from the date of the judgment, shall be void and of no effect: *Provided*, that nothing in this Act contained, shall prevent the plaintiff or plaintiffs in *such* judgments, from renewing the same, after the expiration of the said seven years, *in cases where, by law, he or they would be otherwise entitled so to do*, but the lien of such revived judgments on the property of the defendants thereto, shall operate only from the time of such revival". (*Cobb's Dig.* 498.)

The *general* rule laid down in these words, includes "*all* judgments rendered in *any of the Courts* in this State". It, therefore, includes the judgments of Justices' Courts.

The proviso includes all "*such* judgments" as the general rule includes, and therefore, it includes the judgments of Justices' Courts. And as to all the judgments it includes, it says that nothing in the Act shall prevent the plaintiff from renewing the same, after the expiration of seven years, in cases where, by law, he would be otherwise entitled so to do. It therefore says this, equally of the judgments of Justices' Courts, as of the judgments of any Courts.

In short, judgments of Justices' Courts, are as much within the *words*, both of the general rule and of the exception, the proviso of this Act, as are judgments of the Superior and Inferior Courts.

Being within the words of the Act, are those judgments yet without its meaning?

Why should they be without the meaning? Before the passage of this Act, the Legislature had required all the civil proceedings had before the Justices of the Peace, to be kept in a fair and legible book of entry. And this book was to be preserved. At the time of the passage of the Act, therefore, Justices' judgments were such as are evidenced by a writing: This was by the Act of 1809. (*Cobb's Dig.* 638.)

And before the passage of this Act of 1823, the Legisla-

ture had also put the judgments of Justices' Courts, among judgments of the first class.  In 1812, the Legislature said: " All judgments which may be obtained in, and executions issued from any Justices' Court, after the passage of this Act, shall bear equal dignity with judgments obtained in, and executions issued from, the Superior and Inferior Courts, and shall bind all the property of the defendant, from the date of the said judgment; and also, all the property of his, her and their securities, from the time of their entering themselves as such, until the same shall be satisfied". .

In a practical point of view, the aggregate amount of debt secured by the judgments of the Justices' Courts, probably exceeded, as it does still, and will ever exceed, that secured by the judgments of all of the other Courts put together.  The number of those judgments more than makes up for their want of size.

Yet, it was argued for the plaintiff in error, that this Act of 1823, does not extend to the judgments of Justices' Courts.  The argument was this : The Act allows plaintiffs to renew their judgments after the expiration of seven years of dormancy, in cases where, by law, they would be otherwise entitled so to do, and in no case of a Justice's judgment, would the plaintiff, even with this Act out of the way, be entitled, by law, to renew his judgment.

If this argument be good, it is equally good to prevent the renewal of any judgment of any other Court.  For, by the law, as it stood when the Act was passed, no plaintiff, in any judgment of any Court, whatever, was entitled to renew the judgment.  By the law, as it then stood, no judgment could get into a condition to make it need renewing—could become dormant.  By the law, as it then stood, as much of the Common Law as made judgments, lying dormant, go out of date in a year and a day, and as gave the mode of renewing all of them, enrolled or not enrolled, by action of debt, and as much of the Statute 13 Edw'd. 1, as gave the mode of renewing those of them which might be enrolled, by scire facias, had been repealed, and in place thereof, had been substituted a

rule that no part of the Judiciary Laws of the State should be so construed as to require the renewal of any judgment, as before practiced, or in any other manner whatever.

If, therefore, this argument be good, the effect of it is to render the Act of 1823, wholly nugatory.   An argument producing such an effect is to be rejected, if possible.

In practice, it has been long rejected, probably from the time of the first case which ever arose under the Act.   The Courts have never hesitated to enforce the Act, as to judgments of the Superior and Inferior Courts.   And before that could be done, the ground of this argument had to be disregarded ; for, as we have seen, it applies as well to the judgments of those Courts, as to the judgments of Justices' Courts.   They, "by law", were no more renewable than these.   And the contemporaneous and long-continued practical exposition of a Statute, of such a Statute as this—one so often to be used—is likely to be that which the makers of it intended.

But is it impossible to justify this practical exposition of the Statute, from the face of it ?   Let us see.

The forepart of the Act which contains the general rule, extends to all judgments "on which *no execution shall be sued out*", and to all, on the executions of which, if sued out, no *return* shall have been made by *the proper officer*, within seven years.   This part, therefore extends to judgments that may have been satisfied by the act of parties themselves to the judgments—the act done *before* the issuing of execution, or if done afterwards, done without the interposition of any executing officer, and so, without any "return" of it.   Still, in any such case, the judgment would be, *by law*, effectually extinguished.   And, in any such case, it doubtless ought to *stay* extinguished.   It ought not to be *renewable*.   The Legislature could not have intended it so to be.

But even in such case, it would have been renewable by the *proviso*, unless there had been something put into the proviso to restrain its generality.   It would manifestly have been renewable, had the proviso stopped at the end of these words : "Provided that nothing in this Act contained, shall prevent

the plaintiff or plaintiffs, in such judgments, from renewing the same, after the expiration of the said seven years". But this effect the Legislature did not intend; it would, therefore, do something to prevent the effect. What did it do? It added to those words of the proviso, these others: "in cases where, *by law*, he or they would be otherwise entitled so to do". Are not these words, then, to be considered as designed to effectuate the intention of the Legislature, as designed to exclude such judgments, as might be satisfied by the act of the parties without any official agency, from the benefit of the rule of renewal? Are they not to be considered as meaning no more than this: that judgments are to be renewable in cases where, by law, there is no *obstacle, such as private payment*, to their renewal? The whole face of the Act, taken together, we may, without much risk, say yes.

The proviso is certainly *susceptible* of this sense. It has always been *enforced* in this sense; for, upon *scire facias* under this Act, the inquiry has always been, not whether the judgment had ever been enrolled or recorded, but whether it has ever been paid off—been *satisfied*. Taken in this sense, the proviso is fertile in good fruits; in the other, it is barren of all fruit. This, then, is the sense it must be considered to have.

[1.] This being the sense of the proviso, it permits the renewal of judgments of Justices' Courts, to the same extent that it permits the renewal of judgments of higher Courts.

There is nothing, in the words of the Act, to confine the authority to renew or revive a judgment of a Justices' Court to the Justice of the Peace who happened to render the judgment, more than there is to confine the authority to renew a judgment of the Superior Court, to the Judge who chanced to preside in that Court, when the judgment was rendered. And Justices' Courts are not, and were not, at the date of the Act in question, without written memorials of their judgments. The Act of 1809, requires "each Justice of the Peace, in this State, to keep a fair and legible book of entry of all civil proceedings had before him, for the recovery of debts, &c." (*Cobb's Dig.*

Wilchel, adm'r, &c. *vs.* Hamilton.

638.) By means of this "book", a successor to the Justice who renders a judgment, becomes as well qualified to revive that judgment, as that Justice himself was.

[2.] The jurisdiction to revive a judgment of a Justices' Court, is not, therefore, confined to the Justice who rendered the judgment, but is equally extended to his successors.

[3.] Nor is there anything in the Act, which requires the applicant for reviving a judgment of a Justices' Court, to make affidavit that the judgment has not been paid off or satisfied; and if there is not anything in the Act which requires this, there is nothing anywhere that does; for, the whole proceeding for revivor, is given by the Act.

[4.] In reviving a judgment, is interest to be counted on it for the time during which it has been dormant? It is.

This is to be inferred, from the last clause of the *proviso,* "but the *lien* of such revived judgments on the property of the defendants thereto, shall operate only from the time of such revival", as the mention of one thing is the exclusion of others. The inference is, that the judgment, when revived, is to be as if it had never died, in all respects except one, viz: lien. It is, therefore, to bear interest as if it had been left continuously alive.

Besides, this is the dictate of natural justice, if indeed, it is not the express command of positive law. The judgment of revivor, is but evidence that a debt—a liquidated demand—has never been paid, although appearances may be to the contrary. And the law makes liquidated demands bear interest, during the whole period through which they pass unpaid.

It follows, that the judgment of the Court below, on all the points, ought to be affirmed.