## William McMullen

*v.*

## Mary Gable.

1. Judicial sales—*inadequacy of price.* As a general rule, mere inadequacy of price is not a sufficient cause for setting aside a sheriff's or a master's sale.

2. Same—*sale en masse.* A sale of a tract of land upon execution, will not be set aside, merely because it was not offered in separate parcels, although susceptible of division, when it appears that no benefit would have resulted from such action, or any sacrifice of the property been prevented, and that no request to make such division had been made.

3. Same—*stability given to judicial sales.* The interest of debtors, requires that stability should be given to judicial sales, and that they should not be set aside,

unless mistake, accident, fraud, or the violation of some duty by the officer, or purchaser, has occurred.

4. Same—*when relief will not be afforded.* In general, relief will not be afforded when the sale has been regular, and no duty, or requirement of the law, has been omitted, although hardship may have resulted therefrom.

Appeal from the Circuit Court of Sangamon county ; the Hon. Edward Y. Rice, Judge, presiding.

The opinion states the case.

Messrs. McClernand, Broadwell & Springer, for the appellant.

Mr. S. D. Staley, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

It appears that Morse recovered a judgment, before a justice of the peace, against appellee, upon which an execution was issued, and afterwards returned, no property found. A transcript of the justice's docket was subsequently filed in the Circuit Court of Sangamon county, and an execution was issued thereon, to the sheriff, who levied upon the land in controversy. Afterwards, on the 17th of June, 1863, he sold it to Morse, the plaintiff in execution, for the sum of $23.58, being the amount of debt and costs. Morse afterwards assigned the certificate of purchase to appellant.

On the 24th of December, 1864, the appellee filed her bill to set aside the sale, alleging that the land was of the value of 1,000, was susceptible of division, and had it been divided by the sheriff, it could have been sold for $30 per acre. The bill alleges fraud in Morse, in having the land levied upon and sold without division. The answers of both Morse and appellant are on oath, denying all knowledge of anything wrong, and insisting that the proceedings were all legal and

regular.   Appellant alleges that he purchased the certificate, *bona fide*, for a valuable consideration.   They both deny that the land would have sold for a better price; that the land is on the Sangamon river bottom and its bluffs, and that the portion in the bottom is subject to the overflow of the river, and the land was of little value.   Morse denies all fraud, injustice or circumvention in the proceedings.   He denies that it could have been sold for a better price, and alleges that the sheriff did his duty in calling on appellee for the money before the sale.

It appears that the tract contained thirty-six and one-half acres, and the evidence as to its value at the time, varies from twenty dollars to as low as one dollar and a quarter per acre. One witness, who fixes nó value upon it, says that it is very poor property, and almost valueless.   It appears that the timber had been cut off, and a portion was subject to overflow.   Several witnesses state that it could have been divided into two pieces, but they say they are unable to determine whether it would have sold better thereby.

It is positively denied that there was any fraud in the transaction, nor is any shown by the evidence.   Fraud being out of the question, the inquiry results, whether the inadequacy of price bid at the sheriff's sale, or the failure of the sheriff to divide this small tract of very poor land into smaller lots, and offer them separately, is ground for setting aside the sale.

It rarely, if ever, occurs, that a sheriff's, or master's sale is set aside, merely for inadequacy of price.   Observation teaches that it seldom happens, that real estate, subject to be redeemed for fifteen months, will sell on execution or decree, for its value.   Nor can a question involving opinion of value, be easily determined.   Witnesses of equal intelligence and veracity, frequently differ widely, as to the value of property, and especially so, when the sale has occurred years previously, and property has advanced largely in value.   This case is not an exception to the rule, as we see the witnesses vary largely

as to the value of the property sold. From the description of the property, we cannot regard it, within itself, as of much value. The tract was small, the timber had been removed, a portion of it was under water in a pond, a considerable portion was subject to overflow from the river, and the remainder was the peaks of the hill skirting the river. And, while some of the witnesses say a part of it could have been cultivated, still they do not say that it would have been profitable. It may be that there is little, if any, land, however worthless, but could be cultivated by the employment of a sufficient amount of labor and effort, but it would still be worthless.

The statute has declared (R. S., p. 302, sec. 10) that " when any property, real or personal, shall be taken in execution, if such property be susceptible of division, it shall be sold in such quantities as may be necessary to satisfy such execution." We think the evidence clearly shows that this property could have been divided into two pieces, and could have thus been sold, to satisfy the execution, but no witness says, notwithstanding several were asked the question, that it would have sold for a better price. They say they are unable to determine. Before a sale is set aside, it must appear that wrong has been done; but, in this case, there is no evidence that, if it had been divided, either piece would have satisfied the execution. Although the officer could, no doubt, divide an entire tract, we know of no law to compel him to do so, unless some benefit should result from such action. Yet, if required by the owner, and it would prevent sacrifice, it would undoubtedly be his duty to make a division, and sell it in smaller tracts. But while such would be his duty, and while he should not sell several tracts together, still he should not, unrequested, be required to make a division, unless a smaller portion, conveniently separated from the tract, would be sufficient to satisfy the execution. In this case, there is no evidence that a division would have resulted differently, nor could the witnesses so state.

While the property may have sold at less than its true value, still, plaintiff in execution was not compelled to give up, and forbear the collection of his debt, simply because the property would not sell for its value. We must presume that the sheriff did his duty in notifying appellee that he had the execution. He advertised the property for sale, and when offered, no one bid more than the debt, and the sheriff filed, and had recorded, the certificate of purchase, as it is admitted, and it thereby became notice to appellee that the sale had been made. And yet there was no effort to have the sale set aside, or to redeem the property, until the time for redemption had expired, and appellant had purchased the certificate, as he alleges, and, so far as is disclosed by this record, in good faith.

The interest of debtors requires that stability should be given to judicial sales, and that they should not be disturbed, unless there has been mistake, accident, fraud, or the violation of some duty, by the officer or purchaser. Where the sale has been regular, and it is not shown that some duty or requirement of the law has been omitted, although hardship may have resulted, still relief cannot, in general, be afforded. A creditor should not be required to lose his debt, or delay its collection, until property has so risen in price, that, by a division, a part will pay the debt, instead of the whole. In this case, we are unable to see what other course Morse could have taken, to collect his debt, as the witnesses, who were familiar with the property, will not venture to give an opinion that the property, although worth much more than it sold for, would have brought more, had it been divided. We are of the opinion that the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*