MICHAEL BERGIN *vs.* SAMUEL W. HAYWARD.

An officer is not rendered liable for the conversion of goods attached on mesne process and sold by him on execution, by the fact that proper notice of the suit was not given to the defendant; or by the fact that they were attached in the hands of mortgagees thereof, who were summoned as trustees without objection on their own part, and the validity of whose mortgages and the amount due thereon were fixed by the court.

The fact that an officer who sold on execution in one lot goods, part of which were mortgaged, and applied part of the proceeds in paying off the mortgages, may have paid to the mortgagees an amount larger than the. value of the property mortgaged, does not warrant a verdict against him as a wrongdoer, for the full value of the goods sold.

The sale at one time on several executions of a large variety of goods in one lot at one price is not necessarily illegal or improper, and does not constitute a conversion of the goods on the part of the officer making it.

TORT against a deputy sheriff for the conversion of personal property including boots, shoes, blacking, materials for the manufacture of boots and shoes, tools, implements, and the lease, fixtures and good will of the shop No. 124 on Main Street in Milford. Trial in the superior court, before *Reed*, J., who made a report of the case, for the determination of this court, substantially as follows:

John C. Cosgrove, who was in the business of making and selling boots and shoes in Milford, and who boarded in that town, mortgaged to Charles Fletcher on September 8, 1866, " all the boots, shoes · and the materials for the manufacture thereof, and all the goods and merchandise belonging to me and now in the shop No. 124 Main Street in Milford, and in the basement occupied by me under said shop which were not covered by " a former mortgage to Fletcher; and on February 11 mortgaged to Amariah A. Taft " all my stock in trade, consisting of boots, shoes, rubbers and slippers, and all the stock for the manufacture of boots and shoes, the same being in the shop No. 124 Main

Street in Milford, and all the tools, implements and fixtures used in and about said shop, together with the lease of the same and the good will of the business, together with all property of every name and nature belonging to me in and about said shop and in the basement under the same."

On March 27, 1867, the plaintiff purchased from Cosgrove the goods for the alleged conversion of which this action was brought, and which included both the property covered by these mortgages and also other property, and on the same day Cosgrove fled from the Commonwealth, whither he did not return until he was brought back in the following August under arrest on a charge of forgery, except that, on the evening of April 3, he came secretly a few miles over the state line, entering the Commonwealth after nine o'clock and leaving before midnight. There was conflicting evidence on the question whether the sale by Cosgrove to the plaintiff was void as against creditors; and the defendant introduced evidence tending to show that Cosgrove's absence from the Commonwealth was only temporary, and that he still retained his domicil therein.

On April 1, 1867, the defendant, under a power of attorney from the mortgagees Fletcher and Taft, took possession of the mortgaged property for condition broken, and remained in possession until the same was sold as hereinafter stated, except so far as the possession was affected by the following proceedings.

Nine writs were brought against Cosgrove, and attachments made thereon by the defendant as deputy sheriff, as appeared by his returns thereon, as follows: 1. Writ in favor of B. F. Brown; attachment on April 2, 1867, of "four cases of boots." 2. Writ in favor of Charles B. Godfrey and others; attachment on April 2, 1867, of "thirty boxes of boots and shoes and rubbers, and one box of blacking, forty pieces of leather, and all the fixtures in shop occupied by the defendant, and all the lasts and patterns." 3. Writ in favor of Willard Chilson; attachment on April 2, 1867, of " a lot of boots and shoes and rubbers and shop fixtures, the same having been previously attached on two writs, one in favor of B. F. Brown, the other in favor of Charles B. Godfrey & Company." 4. Writ in favor of Alexander E. Nash,

attachment on April 3, 1867, of "a lot of shoes and boots and shop fixtures, the same having been previously attached on three writs, one in favor of B. F. Brown, one in favor of Charles B Godfrey & Company, one in favor of Willard Chilson." 5. Writ in favor of Elbridge G. Cook; attachment on April 3, 1867, of "thirty boxes of boots and shoes and rubber shoes, one box of blacking, forty pieces of leather and all the fixtures in the shop occupied by the defendant, and the same that was previously attached upon four different writs, No. 1, B. F. Brown; 2, C. B. Godfrey & others; 3, Willard Chilson; 4, A. E. Nash." 6. Writ in favor of Frederick Walker; attachment on April 3, 1867, of "thirty boxes of boots and shoes and rubber shoes, one box of blacking, forty pieces of leather and all the fixtures in shop occupied by the defendant, and the same that was previously attached on five different writs, No. 1, in favor of B. F. Brown; 2, C. B. Godfrey & others; 3, Willard Chilson; 4, A. E. Nash; 5, E. G. Cook." 7. Writ in favor of Amariah A. Taft, the mortgagee above mentioned; attachment on May 6, 1867, of "a lot of shoes and boots, rubbers, shop fixtures, the same having been previously attached on six writs." 8. Writ in favor of Henry J. Melendy; attachment on May 11, 1867, of "a lot of shoes and boots, rubbers, shop fixtures, the same that is attached on eight [seven?] other writs." 9. Writ in favor of S. R. Hayward; attachment on June 24, 1867, of "fifteen boxes of shoes."

At the time of the attachment in each of the first eight of these writs, a summons was left by the defendant in this action at Cosgrove's last and usual place of abode; the writs were all duly returned and the actions thereon entered; and at the return term, without any further notice to Cosgrove, he was defaulted and judgment was rendered for the plaintiffs in the eight several actions, on June 19, 1867. On the ninth writ the case was continued, due notice was given to the debtor, and judgment was rendered therein on February 18, 1868.

On five of the above writs, namely, 2–6, the mortgagees, Fletcher and Taft, were summoned as trustees, and in each case a decree was made that the mortgages were *bonâ fide*, and that

the party plaintiff should, within thirty days, pay a certain sum as the amount due thereon to the mortgagees, and also their costs as trustees, and that a compliance with the decree and the payment of said sum and costs in any one of the five cases should be a compliance with the decree in any other of the cases. The said sum and costs were in fact paid to the mortgagees by Godfrey and others, the plaintiffs in the second suit above mentioned.

Execution issued on all the judgments. From the defendant's return to the execution in the first suit, it appeared that he seized one case of boots, "the same that was attached on the original writ," and sold it by auction at Cosgrove's shop in Milford, on July 2, 1867, at ten o'clock A. M., to Milo O. Mott for $60, and applied the proceeds in partial satisfaction of the judgment. From the defendant's return to the executions in suits 2–8 it appeared that the defendant seized "701 pairs of children's boots and shoes, 759 pairs of women's boots and shoes, 150 pairs of men's boots and shoes, 39 pairs of rubber boots and shoes, one lot of canvas, 7 sheets, 42 yards drilling, 26 sheep skins, 3½ French glove skins, 2 bronze skins, 13 patent calf skins, 14 goat skins, 15 feet enamelled leather buckskins, 66 lbs. calf skins, 77 feet grain leather, 115 feet kip leather, 22 cases liquid blacking, 57 pairs uppers, lot of remnants of upper leather, one show case of fancy articles, one sewing machine, stove and funnel, one show case, one set of tools, 18 doz. boxes of blacking, 200 lbs. sole leather, 2 sets of lasts, 30 doz. welts, lot of shoe leather remnants, one barrel of heels, and lease of shop," being the same or part of the same that was attached on the original writs; that on July 2, 1867, at ten o'clock A. M., at Cosgrove's shop, he sold "said goods by auction to Milo O. Mott for $2500;" and that he applied the proceeds to repaying to Godfrey and others, the plaintiffs in the second suit, the sum and costs paid by them to the mortgagees; to paying expenses and fees; and to paying the executions in suits 2–7 in full, and the execution in suit 8 in part. From the defendant's return to the execution in suit 9, it appeared that he seized "twelve boxes of shoes and two boxes of shoe trimmings and one box of boots, patterns,

tools and furniture, the same that was attached on the original writ," and that on March 28, 1868, he sold them by auction " to various persons, they being the highest bidders therefor, for the sum of $312.36," and applied the proceeds to the payment of fees and expenses and in satisfaction of the execution.

An auditor, to whom the case was referred, reported the value of the property alleged to be converted as $4457, and no evidence was offered to contradict his report.

" The judge being of opinion that, upon the uncontroverted evidence in the case, the plaintiff was entitled to a verdict, on motion of the plaintiff ordered such a verdict for the value of the goods as determined by the auditor, and the jury returned a verdict for the plaintiff accordingly, it being agreed by the parties that, if in the opinion of the supreme judicial court a verdict for the plaintiff can be sustained on the foregoing facts, but only for the value of the goods *minus* the amount paid to the mortgagees, then the verdict is to be amended by deducting the sum so paid. If the foregoing ruling is correct, the verdict is to stand; otherwise, to be set aside and a new trial granted."

*P. E. Aldrich & T. G. Kent,* for the defendant. The judgments were rendered and the executions issued by a court having jurisdiction of the party and of the subject matter. Gen. Sts. c. 126, § 1. *Richardson* v. *Smith,* 11 Allen, 134. The executions were in due form, and the officer was bound to obey his precepts. He was not to inquire whether the defendant, who had his residence in the Commonwealth, was absent therefrom before the rendering of the judgment, so that he was entitled to additional notice. Even if he had been so absent, he might have waived his right to further notice, as in *Morrison* v. *Underwood,* 5 Cush. 52; or he might have entered an appearance. The officer had no power to determine these questions, and no right to delay the execution of his precepts, for the purpose of investigating the regularity and validity of the proceedings on which the judgments were founded. *Sandford* v. *Nichols,* 13 Mass. 286. *Smith* v. *Bowker,* 1 Mass. 76. *Wilmarth* v. *Burt,* 7 Met. 257. *Donahoe* v. *Shed,* 8 Met. 326. *Dwinnels* v. *Boynton,* 3 Allen, 310. *Twitchell* v. *Shaw,* 10 Cush. 46. *Clarke* v. *May*

9 Gray, 410. *Chase* v. *Ingalls*, 97 Mass. 524. *Sheldon* v. *Van Buskirk*, 2 Comst. 473. *Ives* v. *Lucas*, 1 C. & P. 7. *Howard* v. *Proctor*, 7 Gray, 128. *Park* v. *Darling*, 4 Cush. 197. *Packard* v. *Wood*, 4 Gray, 307. Cosgrove was not entitled to further notice. The judgments in these actions were valid against all parties, and all the property in suit was seized and sold upon the executions that issued thereon, subject to the rights, if any, of older attaching creditors, and if the defendant seized and sold the property in suit on any valid executions, it would be immaterial that he also held it on certain other executions founded on invalid judgments. *Hays* v. *Drake*, 6 Gray, 387. At all events, as the verdict was for the full value of the property, under the instruction of the judge a new trial will be granted if the sale on any of the executions was valid. There was no conversion of the property prior to the sale on execution. The seizure and sale were lawfully conducted by the officer. He was authorized to sell the property, in gross or at retail, as in the exercise of his discretion might be for the interest of all parties. *Cunningham* v. *Cassidy*, 17 N. Y. 276. He was authorized to sell the property on all the executions at the same time. *Locke* v. *Coleman*, 2 T. B. Monr. 12. The application of the proceeds of the sale of the property did not concern this plaintiff. The decrees of the court, directing the plaintiffs in the original suits to pay the two mortgages, had been complied with by the plaintiffs in the second suit; and they were authorized to retain the amount so paid, out of the proceeds of the sale. Gen. Sts. *c.* 123, § 70. It was immaterial that the costs of the trustees in all the suits were paid by one plaintiff, and refunded to him; if not, this would not render the sale invalid for the benefit of this plaintiff. A part of the property in suit, and for the value of which the verdict was rendered, was sold on the execution in favor of S. R. Hayward, and if all the proceedings in that case were lawful, this verdict cannot stand; the judgment rendered was valid, and the property was duly seized. The return of the officer, it is true, does not state the sum for which each article was sold, as required by the Gen. Sts. *c.* 133, § 39; but this does not invalidate the sale, although the officer may be liable to any party injured thereby.

*G. F. Hoar*, (*T. L. Nelson* with him,) for the plaintiff. The plaintiff claims that there was no valid attachment, no valid decree, no valid judgment, no valid seizure on execution, and no valid sale, and that all these objections are open to him.

The goods mortgaged were in the possession of the mortgagees, and could not be attached under the provisions of the Gen. Sts. c. 123, § 67. *McPartland* v. *Read*, 11 Allen, 231. This objection is not one that the mortgagees can waive. The decree which follows such an attachment conclusively settles the amount of the mortgage as against every party in interest. §§ 67, 71. The remedy provided by these sections is wholly inapplicable to a case where the right to the attached property is in dispute between the attaching creditor and some person other than the debtor. The defendant cannot maintain this attachment under the Gen. Sts. c. 123, §§ 62, 65, having summoned the mortgagees as trustees and deprived them of their right to make immediate demand. *Morton* v. *Bayley*, 1 Allen, 381. There was no evidence of the amount due on the mortgages at the time of the payment, if the decree was invalid. In the case of Taft's suit, he was both mortgagee and plaintiff. His attachment was a waiver of his mortgage. *Buck* v. *Ingersoll*, 11 Met. 226. The decree awarding him costs as trustee was clearly invalid. The decree was invalid in awarding costs to the trustees. The statute expressly limits the right to costs to the case where the validity of the mortgage is denied. § 69.

There was no valid service of the writs, unless of the two which were served April 3. *Johnson* v. *Thaxter*, 12 Gray, 198. *Downs* v. *Fuller*, 2 Met. 135. *Leonard* v. *Bryant*, 11 Met. 370; *S. C.* 2 Cush. 32. *Packard* v. *Matthews*, 9 Gray, 311. The officer was not protected by his precepts. If there was no valid attachment of the mortgaged property, it could not be seized on execution. *Lyon* v. *Coburn*, 1 Cush. 278. *Brackett* v. *Bullard*, 12 Met. 308. *Lamb* v. *Johnson*, 10 Cush. 126.

The proceedings under the execution were illegal, and made the officer a trespasser *ab initio*. A joint seizure and sale of personal property, on several executions, is contrary to the settled practice in this Commonwealth, and to the mode prescribed in

the Gen. Sts. *c.* 133, § 41, although the rule in England and several American states permits a sale in this mode. *Watmough* v. *Francis*, 7 Penn. State, 206. *Mc Cormick* v. *Miller*, 3 Penn. 230. *Chambers* v. *Coleman*, 9 Dowl. P. C. 588. *Drewe* v. *Lainson*, 11 Ad. & El. 529. See *Locke* v. *Coleman*, 2 T. B. Monr. 12; *S. C.* 4 T. B. Monr. 315. If this mode can be sustained at all, it can only be in cases where some single article is seized; the sheriff cannot be justified in holding and selling on eight executions a large number of separate chattels, a small portion of which would be enough to satisfy each execution. The mode of sale adopted was illegal. It appropriated property to pay debts for which it was not liable. Property mortgaged, but not attached, may have paid the mortgage, and so the equity have been lost without either foreclosure or decree. Property not mortgaged may have paid the mortgage debt. The sale of so large a number of separate articles in one lot was contrary to the clear implication of the Gen. Sts. *c.* 133, § 39.

The amount of the mortgage debts should not be deducted from the value of the goods as found by the jury. 1. The plaintiff was not liable for those debts. 2. It does not appear that the debts were secured upon all the property, or that the property embraced in either mortgage sold for enough to pay it.

AMES, J. The argument for the plaintiff proceeds upon the assumption that his title to the property in dispute is one which was not valid as against the creditors of his vendor. In other words, that, even admitting, for the purposes of the argument, that the transaction between himself and Cosgrove was attended with such circumstances as to cause it to fall within the legal definition of a fraudulent conveyance, and for that reason to render it void as against attaching creditors, yet the defendant, as the representative of those creditors, has wholly failed to make out any legal justification for his proceedings, and is a mere wrongdoer; and that the attachment, the decree, the judgment, the seizure on execution and the sale were all invalid.

With regard to the validity of the judgment, which may perhaps as well be first considered, it appears that the debtor, Cosgrove, immediately after making the sale to the plaintiff, went

away from the Commonwealth March 27, and that he did not return, except secretly and for a very short time in the evening of April 3, until he was brought back as a fugitive from justice in August following. Whether, under such circumstances, and in the want of all evidence as to the acquisition of a new domicil anywhere else, this could be said to be such an absence from the Commonwealth as to bring his case within the provisions of the Gen. Sts. *c.* 126, may possibly be open to doubt. But however that may be, there was a valid and effectual attachment of the property, (and for the purposes of such attachment it is to be taken as his property, and not that of the plaintiff,) in each of the suits against him. These writs were properly entered, and were before the court in which they were pending. They were not *coram non judice.* There was no defect in the service of either of them that would prevent the jurisdiction of the court from attaching, and if there has been a subsequent loss of that jurisdiction, it has arisen either from the fact that the court (erroneously, as the plaintiff contends) decided that the service was sufficient without any continuance or further notice, or from a failure on the part of the attaching creditors to bring the alleged defect in the service of the writs to its attention. But whether regularly and properly or otherwise, judgment was in fact entered in each case, upon default, and execution was issued and delivered to the defendant, as a deputy sheriff, to be served. The law has not intrusted him with the power of revising the rulings of the court, nor made him liable to damages for obedience to his precept, even though the tribunal from which it issued misapprehended the law, or fell into some irregularity or mistake in the course of its proceedings in the case. It is enough for his protection that the precept was apparently regular, and that there was nothing on its face from which a want of jurisdiction on the part of the court could be inferred. The numerous cases cited by the defendant's counsel upon this point are full and decisive. See also *Lewis* v. *Palmer,* 6 Wend. 367; a case in which a justice, who had issued a second execution after the first had been paid, was joined as a defendant with the constable who had served the second execution. The constable

was held not to be liable. The rule seems to be that if the subject matter of the suit in which the precept issued is within the jurisdiction of the court, and nothing appears on its face to show that the person was not, the officer is protected. *Savacool* v. *Boughton*, 5 Wend. 170. In this case, a justice had issued an execution in a suit in which there had been no service of the original writ, of any kind. See also *Folger* v. *Hinckley*, 5 Cush. 263. It is true that a judgment entered against an absent defendant, on default, after an insufficient service, without compliance with the provisions of chapter 126 of the General Statutes, is liable to be reversed on a writ of error at the option of the defendant; or its invalidity may be shown by third persons, on plea and proof; and execution issued upon an erroneous judgment might fail to transfer a good title to the real estate levied upon, or the equity of redemption sold by virtue of it, as decided in *Leonard* v. *Bryant*, 11 Met. 370. But even if the same rule should be considered applicable to personal property sold upon such an execution, it would by no means follow that the officer serving the execution is a trespasser, and liable as such to be mulcted in damages. His precept, in such a case, would protect him.

The plaintiff objects to the validity of the attachment on the ground that the mortgagees, by the defendant as their agent, had taken actual possession of the property, and for that reason the creditors were not entitled to proceed by writs of attachment, in which the mortgagees were summoned as trustees, under the provisions of the Gen. Sts. *c.* 123, § 67. Whether the original attachment was valid or invalid might be a very unimportant question in a controversy as to the legal validity of a seizure and sale on an execution. But, whatever defect there may have been in the original attachment, it is difficult to see how the debtor could avail himself of any objection on that ground. It would be no violation of his rights to attach property in the possession of his mortgagees. If they do not object to the proceeding, how can any one else? It is their rights that are violated by the attachment, if anybody's. They have no reason to object, and under the circumstances must be presumed

to have waived all objection. They have been paid in full, and have nothing more to ask. The impropriety in the attachment consisted wholly in summoning the mortgagees as trustees; and as that mode of proceeding is really intended for their benefit, as well as that of the creditor, and to enable them to give their own explanation in relation to the mortgages, it was wholly for them to judge whether to insist upon any such ground of objection.

It is also insisted that, under the circumstances, the court had no authority to pass any decree as to the *bonâ fide* character of the mortgages, or the amounts due upon them respectively; and that this can only be done in cases where mortgagees, not being in actual possession, are summoned as trustees of the debtor. But it is nevertheless a decree which the officer has no power to revise, and no right to set aside or resist. It is a decree which the court, in a proper case, has the power to pass, and there was nothing apparent on the face of the papers to show that this was not a proper case, so far as it depended upon the question of jurisdiction. His only apparent duty in relation to it was obedience. Certainly he cannot be held liable as a trespasser and mere wrongdoer, in disposing of the attached property, and distributing its proceeds among the mortgagees and attaching creditors, in the order and manner prescribed by the express and formal decree of the court.

We have, then, what, for the purposes of this case, must be considered a valid attachment, and a valid decree as to the character and amount of the mortgages, and a valid judgment. If in any of these particulars there has been any irregularity in either of the writs under which the defendant justifies, there has been nothing of such a character as to deprive the officer of the protection of his precept, or to convert him into a trespasser. The question, however, as to the manner in which he has seen fit to fulfil the command of his precepts, and what he personally may have undertaken to do by virtue of them, may be a very different matter, and depends upon other considerations. His precept will protect him only so far as he acts in obedience to it, and in conformity with the requirements of the statutes in

that behalf made and provided. His precept may be good, and his administration under it so defective and erroneous as to render him personally responsible in damages.

It appears by the report, that, in eight of the writs placed in the defendant's hands for service, there were successive attachments of the same property. The descriptions in the returns upon those writs, although not in terms literally identical, are so connected by reference from each in the series, after the first, to the return in the first, as to make it apparent that the same property is attached in all. The two mortgages, also, which preceded these attachments, are expressed in such comprehensive terms as to convey all the property, of every name and nature, "in and about his shop and in the basement under the same," which Cosgrove had to convey at the times of their respective dates. It would seem to follow that the attachments in question must have covered all of the goods included in the mortgages and remaining on hand at the shop and the basement, and that the mortgages constituted an incumbrance in the way of each one of those attachments. There may have been other goods added to the stock subsequently to the first mortgage, and also subsequently to the second ; but, if so, it does not appear that there was any attempt on the part of the officer to separate such new goods from the rest. The attachments appear to have been general, collectively covering the entire stock. The plaintiff complains that, by proceeding in the manner adopted by the defendant, it has become impossible to distinguish between the proceeds of property mortgaged and of property not mortgaged, and that property not included in either of the mortgages may have been applied to the payment of the mortgage debts. If the property covered by the mortgages was not sufficient for the payment of the mortgage debts, but they were nevertheless paid in full, there might arise a question as to the responsibility of the officer for property not mortgaged, but appropriated to the payment of mortgage debts, instead of being applied upon the executions His defence will avail him only so far as he has appropriated the property to satisfy liens upon it which were valid as against the plaintiff. But no question of that kind

arises upon the form of this reservation. The verdict for the plaintiff, for the whole value of the property, was rendered by direction of the court below, and must be set aside if that direction was not justified by the undisputed facts as reported; and we are satisfied that it was not so justified. The only authority to sustain it in part is the agreement of parties that, if a verdict for the plaintiff can be sustained, " but only for the value of the goods *minus* the amount paid to said mortgagees, then the verdict is to be amended by deducting the sum so paid." As we are of opinion that the officer is entitled to justify both under the mortgage liens and the levies of execution, the plaintiff is not entitled to hold his verdict even as so amended.

It does not appear that the amount paid upon the mortgage debts was more than was actually due; and the reservation presents no question upon that point.

Neither the facts reported nor the form of reservation warrant any determination of the question whether any part of the proceeds of the goods was misappropriated by the officer, as claimed. That question can only be raised or determined upon a new trial, by which the facts upon that point shall be satisfactorily ascertained.

As to the mode in which the officer on this occasion made the sales, it was undoubtedly different from the usual practice, but not necessarily unlawful on that account. The statutes prescribe with considerable minuteness what the officer shall do in such cases, and in what manner he shall protect the rights of all parties. He must allow a certain prescribed time for the redemption of the property; and, if it be not redeemed, he must proceed to sell it at public auction, after having given public notice of the time and place of sale in the manner prescribed by law. But the law does not undertake to point out in what precise manner he shall set up the property to be bidden upon. From the necessity of the case, much must be left to his reasonable and fair discretion. There may be cases in which it would be injudicious to sell the articles singly, or in any other way than by the case, or the dozen, or perhaps even by the lot. He must act in good faith, so as to make the process as little

oppressive to the debtor and as productive to the creditors as circumstances will allow, paying, of course, all due regard to general usage and established practice in like cases. We cannot say, however, that it would necessarily and under all circumstances be illegal or improper for the officer to set up in one lot the whole of a stock in trade, or the entire contents of a workshop, or all the machinery, tools and fixtures of a specific manufactory. It is certainly possible to conceive of cases in which subdivision might be injurious to all parties concerned. For instance, it might be more judicious to sell a pair of horses together, at one collective price, than to sell each horse separately. This mode of selling does not appear to be necessarily in conflict with the Gen. Sts. c. 133, § 39. The defendant's return in this case describes in some detail what articles were sold, and alleges that they were sold for one collective price; that is to say, he returns the sale as he made it in fact.

If it could be shown that, in coming to the determination to offer the whole as one lot, he had not acted with reasonable and due discretion, but had sacrificed the property, or prejudiced the rights and interests of any party concerned, he could undoubtedly be made accountable in damages in an appropriate form of action. But such an error in judgment, if any were shown, would not make him liable for the wrongful conversion of the property to his own use.    *Exceptions sustained.*