<hr />

## Canute R. Matson v. Sweetser et al.

1. EXECUTION—*When Fraudulent as to Other Creditors.*—The taking out and levy of an execution, with no intention to make an immediate sale, but merely to obtain better security for the debt, or for the purpose only of giving time to the debtor, is fraudulent as against subsequent purchasers, incumbrancers or execution creditors.

2. EXECUTION—*Duty of Officer Having Same.*—It is the duty of an officer having in his hands an execution to proceed to levy at once. Any instructions given to him to postpone such action will amount to a waiver of the lien of the writ; because until a levy is made, the lien is secret, and secret liens are not favored.

3. EXECUTION—*Duty of Officer After Levy.*—Having levied his writ, the law allows to the plaintiff and the officer, within certain limits, a reasonable discretion as to the time, place and manner of carrying it into effect. It is not the duty of the officer after levy, to be utterly regardless of the interests of the debtor and by a sale at the earliest possible day sacrifice the defendant's goods, when by a reasonable delay such sacrifice could, without injury to any one, be avoided.

4. EXECUTION—*Postponement of Sale.*—Sec. 49, Ch. 77, R. S., entitled "Judgments and executions" authorizes the officer for good cause, whenever he shall think it for the interest of the parties concerned, to postpone the sale from time to time, not exceeding ten days at any one time. It is not the intent of the law or the object of the writ, that the debtor shall be ruined, or his property wasted; on the contrary, the process is issued to obtain satisfaction thereof, and this may be accomplished by voluntary payment or by a seizure and sale of the debtor's effects, had not before and not after a certain period limited by the law.

5. EXECUTIONS—*Officer Not Compelled to Proceed at Once to a Sale—Adjournment.*—The plaintiff is not compelled to proceed at once to a sale, when by so doing he would defeat rather than promote the objects of the writ, or would unnecessarily and unreasonably impoverish the defendant. Hence a reasonable adjournment of the sale does not render the writ dormant, provided it still be executed before the return day.

6. EXECUTIONS—*Effect of Delay upon the Lien.*—Mere dela yon the plaintiff's part in executing his judgment, will not affect his lien as against the defendant in execution, his personal representatives or heirs, who presumptively can not be prejudiced by it.

7. EXECUTIONS—*Lien of, How Lost.*—The principle upon which such a lien is lost by mere suspension, is that of delay by the plaintiff for the purpose of favoring the defendant in execution at the expense of other creditors, whose diligence may thus be rendered of no avail.

8. EXECUTION—*Sales Under—Reasonable Discretion to be Exercised.*—There is no iron rule which compels plaintiff and sheriff to have property levied upon, sold at the earliest possible day, A reasonable discretion is allowed to be exercised, in order that the order of the writ may be accomplished, not frustrated, and that the property of the debtor be not needlessly sacrificed.

9. EXECUTION SALES,—*Sales in Separate Lots.*—Sec. 12 of Ch. 77, entitled "Judgments and Executions" which provides that "when real or personal property is taken in execution, if the same is susceptible of division shall be sold in separate tracts, lots or articles, and only so much shall be sold as is necessary to satisfy the execution and costs,"

must have a reasonable construction. It is for the officer making the sale to keep clearly in mind that the goods are to be sold so as to realize the largest sum possible, to determine the size of the lots into which they shall be divided. A paper of pins is a lot, and a paper of needles the same; between these and the entire lot of goods in a store, there is a wide range. Lots of one size, or nature, might sell most advantageously in the country, while in a city like Chicago, the entire stock of a retail store located near the business center, might sell for a greater sum than can be realized by dividing it into smaller quantities.

**Memorandum.**—Assumpsit. In the Superior Court of Cook County; the Hon. GEORGE H. KETTELLE, Judge, presiding. Declaration and plea of general issue; trial by court and finding for plaintiff; defendant appeals. Heard in this court at the March term, 1893. Reversed; judgment entered for defendant. Opinion filed April 12, 1893.

## STATEMENT OF THE CASE.

On January 8, 1890, writs of execution as follows were issued and placed in the hands of appellant, as sheriff, to execute. One from the Superior Court in favor of Nano Murphy, for $1,765.67; one in favor of E. W. Price, for $5,160.60, and seven from the Circuit Court in favor of the Hibernian Banking Association, for $2,027.50, $2,020.11, $1,742.39, $3,990.61, $9,888.33, $4,031.84 and $5,031.25, respectively; all of the said writs being against Fenton R. Lawlor. On the same day an attachment writ was issued from the Circuit Court, in favor of Jas. H. Walker, and against the said Lawlor for $979.16, which writ was also placed in the hands of appellant, as sheriff. Under said nine writs of execution, and said writ of attachment, appellant, as sheriff, seized and took possession of a stock of goods at numbers 182 and 184 Wabash avenue, together with fixtures; the invoice value of the goods was about fifty thousand dollars; and also a stock of goods on Blue Island avenue, having an invoice value of something over seven thousand dollars, and advertised the same for sale. The Wabash avenue stock to be sold on January 22d, and the Blue Island avenue stock one or two days later.

On January 17, 1890, the defendant, Lawlor, sent out a circular to his creditors, in which he stated that all his effects were under seizure of sheriff upon executions amount-

ing to $41,800. That his indebtedness outside of the judgments under which the levies were made, amounted to about $30,000, and that the effects levied upon were reasonably and fairly worth $80,000, and ought to bring $70,000 if favorably disposed of; and asking consent of creditors to take the goods out of the possession of the sheriff, sell them at private sale, and apply the proceeds, first, to the payment of the indebtedness of the judgment creditors, and subsequently to creditors whose claims were subordinate thereto. Inclosed therewith to each creditor he sent a printed form of consent, which he asked them to execute. Out of ninety-six creditors eighty-seven consented to his request. Appellees refused to consent, as did some others.

On January 22, 1890, the sale advertised for that day was adjourned to January 29, 1890, by direction of the plaintiffs in the execution writs, with the consent of the defendant, Lawlor, and under their agreement. On the 29th day of January the same parties, by a like agreement, again adjourned the sale until February 8, 1890. Prior to the expiration of the last stay of execution, and on February, 5, 1890, a writ of execution was issued against Lawlor, and in favor of the appellees, for $1,957.77 and placed in the hands of appellant, as sheriff, with directions to levy the same upon the property of Lawlor and make the amount of said writ as soon as possible.

On February 8, 1890, the sale was again continued until the 11th day of February, 1890. Between the said adjournment and the 11th day of February, 1890, appellant, as sheriff, was instructed by the appellees' representative not to postpone the sale any longer, and was notified that appellees objected to any further postponement. On February 11, 1890, the sale was adjourned to February 13, 1890. The sale of the stock of goods on Blue Island avenue was postponed the same number of times, the day of sale being fixed each time one or two days later than the day for the sale of the Wabash avenue stock.

All of the judgment creditors, except appellees, joined with the execution debtor in directing the sheriff to sell the stocks

in bulk; and the sheriff took a bond of indemnity before doing so. The sales were made February 13th and 15th.

At the sale of the Wabash avenue stock five bids were made by three different bidders; the first was about $20,000, the next $25,000, and so on until it was sold for $36,000.

At the Blue Island avenue sale the bidding was spirited. The stock there brought $6,100. The deputy who made the sale testifies that the man who purchased it, wanted all of it or none, and was bound to have it if he paid a hundred cents on the dollar for it.

Evidence was given upon the trial that in Chicago, where the stock of a dry goods store is to be sold at sheriff's sale, it will bring more when sold in large than in small lots, and that fifty per cent of the invoice price is a good sale.

There was no evidence that appellees suffered any actual damage, either from the sales being made in the manner they were, or from the adjournments thereof.

A jury having been waived, the court held the following propositions of law submitted by the plaintiff:

" Fifth. That if the court finds from the evidence in this case, that the property in question upon which the defendant levied as sheriff, was sold under and by virtue of a stipulation and agreement between the defendant, Lawlor, and all the judgment and attaching creditors, except the plaintiffs, Sweetser, Pembrook & Co., then, and in that case, no legal sale of the property was made by the defendant as sheriff. And if the court further finds that the property so levied upon was sufficient to satisfy said writ of Sweetser, Pembrook & Co., then the defendant is liable in this action for the amount of said writ with interest.

Eighth. That all evidence offered by the defendant in this case, showing, or tending to show, that the plaintiffs have suffered no damages, for the reason that the property levied upon brought as much, or more, in the manner it was sold than it would have brought had it been sold according to law, is speculative and incompetent.

Ninth. That the plaintiffs are entitled to recover a verdict under the evidence in this case by establishing either one of the two following propositions:

Matson v. Sweetser.

· 1st.   That the writs of execution in the hands of the defendant as sheriff, antedating the writ of execution in favor of the plaintiffs and against Fenton R. Lawlor, also in the defendant's hands as sheriff, were stayed by order of the plaintiffs therein, or by agreement between them and the defendant therein, and the sale thereunder delayed and postponed from time to time after the plaintiffs' writ of execution was placed in the defendant's hands as sheriff, without the consent and against the wish of the plaintiffs, by reason whereof the plaintiffs' writ is entitled to priority; or

· 2d.   That the defendant, as sheriff, instead of dividing the property levied upon and selling the same in lots or articles, according to the statute and under and by virtue of the writs in his hands, sold the same in bulk, under and by virtue of an agreement entered into between the plaintiffs, in the writs in his hands antedating the plaintiffs' writ, and the defendants in said writs, without the consent of the plaintiffs, and against their protest.

That whenever a sheriff is sued for damages on account of a false return of a writ of execution, he can only justify such return by showing a compliance with the law in all respects, or a waiver thereof by the plaintiffs bringing such suits.

Eleventh.   That the acts of the defendant, as sheriff, in selling the property levied upon by him under the plaintiffs' writ, under and by virtue of an agreement between the plaintiffs, in the writs antedating the plaintiffs' herein, and the defendant Lawlor, amounted in law to a conversion of the property, and rendered the sheriff liable in this suit to account to the plaintiffs for the amount of their writ and costs, the property so levied upon being of more than that value."

There was a finding and judgment for appellees for $2,312.22.

APPELLANT'S BRIEF, DUNCAN & GILBERT, ATTORNEYS.

Appellant contended that in the case at bar there was no agreement of any kind, much less an agreement that the

execution creditors would not enforce their executions. There was simply and solely a reasonable postponement of the sale, and its purpose was not to injure but to benefit the other creditors, including the plaintiffs. Baldwin v. Freydendall, 10 Brad. 106; Koren v. Roemheld, 6 Brad. 276; Gilmore v. Davis, 84 Ill. 487.

It has long been the settled law of this State that relief will not be granted on account of a sale of real estate *en masse*, unless it appears that such sale has resulted in injury to the party complaining. Ross v. Mead, 5 Gil. 173; Gillespie v. Smith, 29 Ill. 481; Prather v. Hill, 36 Ill. 402; Freeman on Executions, Sec. 296.

No reason is perceived why the same rule should not be applied to sheriff's sales of personal property.

APPELLEE'S BRIEF, WEIGLEY, BULKLEY & GRAY, ATTORNEYS.

The stay of execution sale under the agreement between the parties gave priority to appellees' writ. Freeman on Executions, Sec. 206; Murfree on Sheriffs, Sec. 536; Dennis v. Whetham, 30 Law Times Rep. (N. S.) 514; Warmoll v. Young, 5 B. & C. 660; Imray & Magnay, 11 M. & W. 267; Rice v. Surgeon, 7 Modern Rep. 43; Mentz v. Hamman, 34 Am. Dec. 546; Eberley v. Mayer, 1 Rawle 366; Hickman v. Caldwell, 4 Rawle 376; Berry v. Smith, 3 Washington's C. C. Rep. 60; Ross v. Weber, 26 Ill. 222; Koren v. Roemheld, 6 Brad. 275; Gilmore v. Davis, 84 Ill. 487; Baldwin v. Freydendall, 10 Brad. 119.

The sale in bulk by agreement of the parties, was not a legal sale, and the sheriff can not justify thereunder. Sec. 12, Chap. 77, Revised Statutes; see Brodie v. Seegraves, 3 N. C. 144; Klopp v. Whilmoyer, 43 Pa. St. 219; Freeman on Executions, Sec. 297.

The sheriff having violated the law, can not justify under the illegal proceedings. Freeman on Executions, Sec. 302; Knight v. Herrin, 48 Maine, 533; Smith v. Gates, 21 Pick. 55; Pierce v. Benjamin, 14 Pick. 356.

OPINION OF THE COURT, WATERMAN, J.

It is undoubtedly the case, that the taking out and levy of execution, with no intention to make an immediate sale,

but merely to obtain better security for the debt, or for the purpose only of giving time to the debtor, is fraudulent as against subsequent purchasers, incumbrancers or execution creditors. Freeman on Executions, Sec. 206.

We fail to find in the record of this case any evidence that any of the plaintiffs in the various executions, upon which the sales in question were made, took out or had levied process for any purpose other than to obtain satisfaction to as great an extent as possible in as brief a period as such end required. There is no evidence that these executions were used merely to give the defendant time, or for the purpose of hindering, delaying or defrauding creditors. It was not until February 5th that appellee's execution was issued; no delay or postponement of the sale up to that period could have affected them. A sale could not have been made upon their writ prior to February 15th, and upon that day the last of the goods were sold.

It is the duty of an officer having in his hands an execution to proceed to levy at once. Any instructions to him given to postpone such action will amount to a waiver of the lien of the writ; because until a levy is made, the lien is secret, and secret liens are not favored. Having levied his writ, the law allows to the plaintiff and the officer, within certain limits, a reasonable discretion as to the time, place and manner of carrying it into effect. It is not the duty of the officer, after levy, to be utterly regardless of the interests of the debtor, and by a sale at the earliest possible day sacrifice the defendant's goods, when by a reasonable delay such sacrifice could, without injury to any one, be avoided.

The Statute, Chap. 77, Sec. 49, authorizes the officer, for good cause, whenever he shall think it for the interest of the parties concerned, to postpone the sale from time to time, not exceeding ten days at any one time.

It is not the intent of the law or the object of the writ, that the debtor shall be ruined, or his property wasted; on the contrary, the process is issued to obtain satisfaction thereof, and this may be accomplished by voluntary payment or by a seizure and sale of the debtor's effects, had, not

before and not after a certain period, limited by the law. In Lantz v. Worthington, 4 Pa. St. 153, the court by Chief Justice Gibson, say:

" In the case to which we have referred, the stay was indefinite, and the inference was unavoidable that the execution was levied either to cover the goods or to create a lien separate from the possession, neither of which the law will endure. The legitimate end of an execution is to have the money at the return of the writ, or, for good reasons set forth in the return, to hold the property for another writ, not to favor a debtor by securely giving him time or a deceptive appearance of ownership; and with this end, an indefinite postponement of the sale is inconsistent. Here, however, the sale, technically speaking, was not postponed, but adjourned for a period of ten days—a measure not inconsistent with making the money on the same writ, and therefore, not a ground of presumption that anything else was intended. Such a measure may even be indispensable to the creditor's interest, as it may enable the sheriff to sell for a better price. If the adjournment were to a time beyond the return day, when no sale could be made on the writ, it would be equivalent to an indefinite postponement, and a badge of fraud; but where it is in its nature consistent with the professed end, it would be unreasonable to interfere with the creditor's direction of his execution."

To the same effect are : Wier v. Hale, 3 Watts & Serg., 285; Thorn's Case, 2 Barr, 331 and Dancy v. Hubbs, 71 N. C. 424.

In Freeman on Executions, Sec. 206, it is said:

" The plaintiff is not compelled to proceed at once to a sale, when by so doing he would defeat rather than promote the objects of the writ, or would unnecessarily and unreasonably impoverish the defendant. Hence a reasonable adjournment of the sale does not render the writ dormant, provided it may still be executed before the return day."

And in the same section the author says:

" It is clear that mere delay on the plaintiff's part in executing his judgment, will not affect his lien as against the

defendant in execution, his personal representatives or heirs, who presumptively can not be prejudiced by it."

" The principle upon which such a lien is lost by mere suspension, is that of delay by the plaintiff for the purpose of favoring the defendant in execution at the expense of other creditors, whose diligence may thus be paralyzed and rendered of no avail."

In no case can a sale of personal property be had without ten days notice thereof; and it is manifest that instances may arise in which more than ten days will be required for putting the property in a proper condition for sale, completing the inventory thereof, and bringing it to the hammer, as is the duty of the officer, under the most favorable circumstances for realizing its full value, the nature of the case will permit. If the plaintiff could not direct a reasonable adjournment of the sale for the purpose of accomplishing the purpose of the writ, in many cases the property would be sold under conditions that would produce an unnecessary and useless sacrifice thereof.

If the plaintiff in an execution under which the personal property of the defendant, located in Chicago, had been advertised for sale on the Monday of the great fire of 1871, had directed an adjournment thereof, no one would have been heard to contend that by an adjournment had under such circumstances, the prior lien of the execution was lost. There are times, when, owing to the condition of the roads, it is impossible to move property located in rural districts, and extremely difficult for bidders to get to the place where it is.

There can be no iron rule which compels plaintiff and sheriff to have property levied upon, sold at the earliest possible day. A reasonable discretion is allowed to be exercised, in order that the object of the writ may be accomplished, not frustrated, and that the property of the debtor be not needlessly sacrificed.

We do not regard the cases of Ross v. Weber, 26 Ill. 222; Koren v. Roemheld, 6 Brad. 275; Gilmore v. Davis, 84 Ill. 487, or Baldwin v. Freydenhall, 10 Brad. 119, cited by ap-

pellees, as announcing a rule not in accordance with the views here expressed.

It is insisted by appellees that the sale of the goods in the Wabash avenue store as one lot, and those in the Blue Island avenue store as another lot, was a clear violation of the statute, which provides that "when real or personal property is taken in execution, if the same is susceptible of division, it shall be sold in separate tracts, lots or articles, and only so much shall be sold as is necessary to satisfy the execution and costs."

If the goods should have been sold as separate articles, then each handkerchief, collar, pair of stockings, etc., ought to have been separately sold.

We do not understand appellees as contending for this, but they do urge that the sale should have been in lots.

The goods were sold in lots, those in each store constituting a lot.

The contention is not over a refusal to sell in lots, but because the lots were not made up of such size or selection as appellees insist is required.

Neither appellees nor any one appeared at the sale asking for a sale in smaller or different lots, or a separate offer of any article; nor have appellees pointed out to us how the lots in their judgment should have been made up. Appellees did, on the evening prior to the sale, inform some one of the sheriff's numerous deputies, that they objected to a sale in bulk. Such deputy was not the one who made the levy or sale. Nor was any evidence introduced showing that a sale in smaller or different lots would have been more productive. No bidder requested a division, and none has been produced or shown to have existed who desired a sale in any other manner than the one pursued. Appellees had ample notice of the sale; it was their privilege to have attended or to have procured others to do so; and they might, if present, have protested against a sale in such lots, and offered to buy if smaller or different quantities were offered.

In regard to the manner, as well as the time at which an

execution sale is to take place, the plaintiff and the sheriff have a reasonable discretion in carrying out the objects of the writ. Murfree on Sheriffs, Sec. 960; Freeman on Executions, Sec. 296; McMullen v. Goble, 47 Ill. 67; Smith v. Meldren, 107 Penn. St. 348; Furbush v. Greene, 108 Penn. St. 503; Bergin v. Hayward, 102 Mass. 414, 426.

It is for them, keeping clearly in mind that the goods are to be sold so as to realize the largest sum possible, to determine the size of the lots into which they shall be divided. A paper of pins is a lot, and a paper of needles the same; between these and the entire lot of goods in a store, there is a wide range. Lots of one size, or nature, might sell most advantageously in the country, while in a city like Chicago, the entire stock of a retail store located near the business center, according to the evidence in this case, will sell for a greater sum than can be realized by dividing it into smaller quantities. It is easy to see that it would be impossible to divide the stock of any ordinary retail drug store into lots that would sell for as much as would the entire stock in one lot.

In Robbins v. The Butler Paper Co., 35 Ill. App. 512, this court, speaking of a contemplated sale by a sheriff of a large printing establishment, said: " It is probable, if not certain, that to break up the business and sell at public auction, piecemeal, the tangible property which a sheriff could levy upon and sell, would have been such a sacrifice of the property that the judgments, after applying the proceeds of the sale and all that a receiver could get out of the tangible assets, would have remained unsatisfied to a large extent, without any resulting benefit to anybody."

The Supreme Court of Massachusetts in Bergin v. Hayward, 102 Mass. 414, 426, speaking of sales by sheriffs, said : " From the necessity of the case, much must be left to his reasonable and fair discretion. There may be cases in which it would be injudicious to sell the articles singly, or in any other way than by the case, or the dozen, or perhaps even by the lot. He must act in good faith, so as to make the process as little oppressive to the debtor and as productive

to the creditor as circumstances will allow, paying, of course, all due regard to general usage and established practice in like cases. We can not say, however, that it would necessarily and under all circumstances, be illegal or improper for the officer to set up in one lot the whole of a stock in trade, or the entire contents of a workshop, or all the machinery, tools and fixtures of a specific manufactory. It is certainly possible to conceive of cases in which subdivision might be injurious to all concerned."

Any inflexible rule giving to the parties most interested no discretion, can not fail to prove disastrous.

Nor is it an objection either to the adjournments or manner of these sales, that the execution plaintiff and defendant agreed to what was done. There was nothing corrupt or fraudulent in such agreement, nor was it for any improper purpose, and no one appears to have been injured thereby.

The law does not require either plaintiff or officer to, at his peril, abstain from doing that which may be agreeable or beneficial to the debtor. It does require that they, in good faith, proceed with diligence to accomplish the purpose of the writ, viz., to obtain the largest possible satisfaction of the writ. That in this case appears to have been done; and not only is there nothing to show that any course other than that taken would have been beneficial to any one, but it seems that a larger sum was realized because of the course pursued. Sixty-five per cent of the invoice value of a stock of dry goods is, according to the evidence, an unusually large amount to be realized upon an execution sale.

The findings of the Superior Court were erroneous, and the judgment will be reversed and a judgment for the defendant entered here, with a finding of facts as indicated in this opinion. Union National Bank v. Manistee Lumber Co., 43 Ill. App. 525.

Reversed, and judgment for defendant.

GARY, P. J., DISSENTING.

I am not quite satisfied with the process by which the result in this case is reached, while I am satisfied that in

fact that result is just. It is difficult to believe that the sale in question was in the manner that the statute requires, and it is impossible to prove that the goods might not have brought more if sold in parcels.

As between buyer and seller, it is always assumed that the market price of goods is their real value, and that they can be bought or sold for that price. If that assumption is applicable to this case, it follows that it must be presumed that the plaintiff in the unsatisfied execution has been injured.