ALBERT CHASE *vs.* ORREN M. INGALLS.
SAME *vs.* ISAAC G. CARRIER.

The fact that the magistrate who took the affidavit and made the certificate to authorize the arrest of a person on an execution, under the Gen. Sts. *c.* 124, § 5, was the attorney of record of the judgment creditor, does not render the officer liable in damages for making the arrest, if it was not disclosed by the precept nor actually known by him.
An execution to enforce a decree for alimony is not for " debt or damages," in the sense of the Gen. Sts. *c.* 124, § 5.

TORT ; against Ingalls, as a deputy sheriff for Bristol, for an alleged illegal arrest of the plaintiff; and against Carrier, as keeper of the county jail, for alleged illegal imprisonment of the plaintiff therein.

The cases were tried together, in the superior court, before Vose, J., and the counsel for the plaintiff stated in his opening, that he expected to prove that in proceedings for divorce commenced in this court by Mary Jane Chase, the plaintiff's wife, a divorce was granted to the libellant, and that at April term 1865 a decree in her favor, for alimony, for the sum of eleven hundred dollars, was entered against the plaintiff, and an execution to enforce this decree was issued and delivered to Ingalls for service; that Ingalls arrested the plaintiff upon this execution, and committed him to the county jail, and Carrier received him into the jail upon this commitment and imprisoned him there; and that at the time of this arrest and imprisonment there was an affidavit of arrest annexed to the execution, which had been subscribed and sworn to by Mrs. Chase before a justice of the peace who was her attorney of record in the proceedings for divorce. And the counsel for the plaintiff stated that he should contend, upon proof of these facts, that as matter of law an affidavit so taken and subscribed did not authorize any arrest of

the plaintiff; and that his arrest and imprisonment were therefore illegal and void.

A copy of the execution was introduced in evidence, which recited that, " Whereas Mary Jane Chase " had " recovered judgment against Albert Chase " " for the sum of eleven hundred dollars damage," and an additional sum as costs of suit, therefore the officer was commanded " of the goods, chattels, or lands of the said judgment debtor " to " cause to be paid and satisfied unto the said judgment creditor at the value thereof in money, the aforesaid sums," and for want of such goods, &c., " to take the body of the said Albert Chase, and him commit unto our jail," " and him detain in custody within our said jail until," &c. The affidavit of Mary Jane Chase annexed to the execution was in the form usual under the Gen. Sts. *c.* 124, § 5, *cl.* 1, she styling herself therein " plaintiff and judgment creditor," and making oath before Thomas M. Stetson, justice of the peace, " that the debtor has property not exempt from being taken on execution which he does not intend to apply to the payment of the plaintiff's claim ; " and the justice certified that he was " satisfied that there is reasonable cause to believe the charges therein contained." And the return of the officer set forth that " by virtue of this execution and by order of the judgment creditor within named," he arrested the body of Albert Chase, " the within named judgment debtor," and carried him before the judge of probate for Bristol, and afterwards committed him to the county jail, " the said judgment debtor not desiring to take the oath for the relief of poor debtors, and not desiring to enter into recognizance with surety, in conformity with the statutes in that behalf."

The judge asked the counsel if he expected to prove that the fact, that the magistrate before whom the affidavit was taken was the attorney of record of Mrs. Chase in the proceedings for divorce, was known to the defendants, or either of them, at the time of the arrest and commitment of the plaintiff; and the counsel replied that he could not say what knowledge the defendants had of this fact, and did not think it material whether they knew it or not.

It being conceded that the facts were as stated by the plain-
tiff's counsel in his opening, upon the suggestion of the judge
the defendants were called as witnesses; and Ingalls testified
that he received the execution from one Cobb, a deputy sheriff,
and that, when he received it, there was no affidavit of arrest
thereon; that he sent it to Thomas M. Stetson, esquire, and
afterwards received it back with the affidavit annexed, and then
made the arrest; that he had no knowledge before or at the
time of the arrest, that Mr. Stetson was the attorney of record
in the divorce proceedings; and that he knew nothing about
that matter: and Carrier testified that he had no communica-
tion with Mr. Stetson as to the imprisonment, and knew nothing
of the case whatever till the plaintiff was brought to the jail, and
did not know that Mr. Stetson was the attorney of record in
the divorce proceedings.

The plaintiff offering no evidence to qualify or control the
testimony of the defendants, the judge ruled that the action
could not be maintained, under which ruling verdicts were re-
turned for the defendants; and the plaintiff alleged exceptions.

*L. Lapham*, for the plaintiff, cited *Pearce* v. *Atwood*, 13 Mass.
324, 339, 340; *Piper* v. *Pearson*, 2 Gray, 120, 124; *Common-
wealth* v. *McLane*, 4 Gray, 427; *Fisher* v. *McGirr*, 1 Gray, 45;
*Commonwealth* v. *Albro*, 1 Gray, 48, 49.

*T. M. Stetson*, for the defendant Ingalls. No actual interest
in the justice was proved or alleged, nor whether he had been
engaged as attorney actively or nominally, nor whether that re-
lation had subsisted till final decree or ended long before.

1. The officer may justify by pleading his process regular upon
its face, and cannot look further, for, if he should, it would put a
stop to the execution of legal process. *Commonwealth* v. *Kirby*,
2 Cush. 581. *Folger* v. *Hinckley*, 5 Cush. 266. *Whipple* v. *Kent*,
2 Gray, 410. *Wilmarth* v. *Burt*, 7 Met. 260. *Cottle, appellant*, 5
Pick. 484. *Donahoe* v. *Shed*, 8 Met. 326. *Kennedy* v. *Duncklee*,
1 Gray, 71.

2. The process issued by special order of this court to enforce
a decree for alimony is not affected by the Gen. Sts. *c*. 124, §§
1-6. These sections being in derogation of common law rights

and remedies, no affidavit was necessary in the case at bar, unless their terms necessarily include it. The privilege of taking the poor debtors' oath is secured to a person " arrested on execution in any case." Ib. § 9. An arrest thus easily terminated by one who can honestly take the oath does not always need preliminary safeguards, and such therefore are required only on executions issued for debt or damages in civil actions, not including actions of tort. Ib. § 5. There may well be this difference in stringency of remedy between a case of alimony, in which the duty and ability of the husband to support the wife have been investigated and determined by the highest tribunal before the issue of process, and the case of a debtor, whose liability is plain matter of contract, but of whose ability to pay nothing is determined.

3. The prayer for alimony is not an action. 3 Bl. Com. 94. It has no jury trial. Civil actions are tried by jury, unless such trial is waived by the parties. Gen. Sts. *c.* 129, § 66. A civil action commences by writ; Ib. *c.* 123, § 9 ; and may be brought even if neither party lives in the state ; Ib. § 1 ; and, if a personal action, may, with certain exceptions, be commenced by trustee process ; Ib. *c.* 142, § 1 ; and it will hardly be contended that, if the prayer for alimony is a civil action, it is either a real or mixed action, or one of the forms of personal action excepted from the operation of the provision last quoted. Further, a civil action is a proceeding which passes to a judgment on which a writ of error may lie. Ib. *c.* 129, § 42. In all civil actions interrogatories may be filed ; Ib. § 46 *et seq.*; and it is apparent that the expression " civil action " is thus used in a common law sense, for by the St. of 1862, *c.* 40, the same provisions as to interrogatories are extended to suits in equity. Nor does the statute of limitations apply to proceedings for alimony. When the most comprehensive word to express forms of legal proceeding is desired, the Gen. Sts. use the word suit. Gen. Sts. *c.* 121, § 35.

4. Alimony is based on neither debt nor damages. 2 Bish. Mar and Div. (4th ed.) § 488. *Lyon* v. *Lyon*, 21 Conn. 185. It is a support allowed out of the husband's estate; Gen. Sts. *c.*

107, § 43; and depends on no principle of indebtedness, nor on his merit or demerit, but on the amount of his means and those of the party in whose favor it is decreed. The practice of parliament was always to require the husband to provide for the discarded and guilty wife. 2 Bish. Mar. and Div. § 377. And in several states the law requires this. Ib. § 379. The duty to maintain is not based on contract. *Logan* v. *Logan*, 2 B. Monroe, 142. See also *De Blaquiere* v. *De Blaquiere*, 3 Hagg. Eccl. 322; *Blake* v. *Blake*, 7 Iowa, 46; 2 Bish. Mar. and Div. §§ 435, 476; *Burr* v. *Burr*, 7 Hill, 207. Alimony does not survive the husband's death, nor go to the wife's administrator; *Wallingford* v. *Wallingford*, 6 Har. & Johns. 288; 2 Bish. Mar. and Div. § 436; and cannot be ordered for the wife's life. Ib. § 428. Even if an action is maintainable on a decree for alimony, which seems doubtful since *Morton* v. *Morton*, 4 Cush. 518, that would only indicate the effect *in futuro* of a decree, and not show that the decree was based on debt or damages. *Van Buskirk* v. *Mulock*, 3 Harrison, (N. J.) 193, 194. Orders of court for alimony may be enforced, as in equity, by process for contempt. The court may order alimony secured. Even after a decree for annual alimony is recorded, the court may alter it on petition. Gen. Sts. *c.* 107, §§ 45, 47. Perhaps, after an award of alimony *in solido*, the court might make a further allowance, as a probate judge does sometimes to a widow. Ib. § 48. Costs are created in a way analogous to alimony; Ib. *c.* 156, § 16; but were never deemed debt or damages. A poor debtor formerly could obtain discharge from debts but not from costs. Even now no affidavit is necessary to justify an arrest for costs. Ib. *c.* 124, § 6. Taxes also are not within the provisions of the laws abolishing imprisonment for debt. *Appleton* v. *Hopkins*, 5 Gray, 530. The execution for alimony is not the execution of the common law, but derives its authority specially from the Gen. Sts. *c.* 107, § 45. When the decree in this case ordered an execution to be issued against Mr. Chase, it was as if the decree itself set forth in detail what was to be done to him if he should refuse to obey its mandate.

*G. Marston*, for the defendant Carrier.

WELLS, J. The execution, upon which the plaintiff was arrested and committed, was regular in form, and bore the affidavit and certificate of a magistrate as provided by the Gen. Sts. *c.* 124, § 5. *Primâ facie*, it is a complete defence to the officers acting in accordance with its directions. The defect relied on by the plaintiff to deprive them of its protection is the fact, now admitted, that the magistrate who made the certificate was the attorney of record of the party in whose favor the execution issued.

It is settled law that an officer is protected by his precept, if the court or magistrate had authority such as the precept assumes. It is not his duty to inquire into the particular facts of the case, if the general power appear and the process be regular. He cannot be affected by any irregularity occurring prior to the issue of his precept, nor by the existence of any fact which deprives the court or magistrate of jurisdiction in that particular case, provided the defect be not disclosed by the precept itself, nor known to the officer. Even if the defect be one which renders the precept void in its operation between the parties, or for the transfer of property, yet it will not subject the officer to liability as a trespasser. See *Sandford* v. *Nichols*, 13 Mass. 286, and cases cited to this point by the defendants.

The cases relied upon by the plaintiff do not support any doctrine inconsistent with this. The decision in *Pierce* v. *Atwood*, 13 Mass. 324, 344, is put expressly upon the ground that the want of authority in the magistrate appeared from the warrant itself. In *Fisher* v. *McGirr*, 1 Gray, 45, the want of jurisdiction arose from the very character of the proceeding, which the warrant disclosed. In *Piper* v. *Pearson*, 2 Gray, 120, the officer was held liable because his warrant did not show affirmatively an apparent jurisdiction, there being none in fact, and the burden being upon him to establish his justification.

Where the proceeding is, in its nature, one in which the magistrate nas no right to exercise the authority under which the officer assumes to act, he is held responsible although acting in good faith; because in such case the want of authority is disclosed upon the face of the precept. But where the want of

authority arises from some fact that is personal to the magistrate, or peculiar to the proceedings in the particular case, the precept cannot disclose it, and the officer is not to be held liable without actual knowledge of the fact.

The plaintiff offered no evidence to show that the defendants had actual knowledge that the certifying magistrate was disqualified; not deeming it to be material whether they knew it or not; and the testimony of the defendant Ingalls, as reported, would not warrant the jury in finding such knowledge. He is not entitled now to have a jury to determine that question.

Upon another ground we think the verdict must stand. The arrest was in accordance with the authority and directions of the precept. It is a proper mode of serving an execution, unless the statute (Gen. Sts. *c.* 124, § 5) restricts the right. The restriction applies to executions "issued for debt or damages in a civil action, except in actions of tort." Perhaps the term "civil action" might be held to embrace suits for divorce. But the restriction clearly does not extend to all cases that might be termed "civil actions." It is limited to such only as are for the recovery of "debt or damages." This limitation, and the exception of "actions of tort," which follows, indicate that the restriction is not general, and was not intended to apply to such warrants of the court as may issue to enforce its decrees in special proceedings like this of libel for divorce. The allowance of alimony, or the award to the wife of her own or a part of the husband's estate upon granting a divorce, is not a debt nor damages, in the sense of the statute. No affidavit and certificate of a magistrate were necessary; and therefore the exceptions must be overruled.