## BARTH TELLEFSEN *vs.* PETER P. FEE.

Suffolk. November 19, 1895. — March 23, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Assault — False Imprisonment — International Law — Writ — Jurisdiction.*

Under Art. 13 of the treaty between the United States and the Kingdom of Sweden and Norway of 1827, 8 U. S. Sts. 346, 352, the courts of this country have no jurisdiction of an action for wages, brought by a seaman against the master of a Norwegian vessel.

Where a court has no jurisdiction of the subject matter of the controversy, or over
the persons of the parties, an officer who is informed of facts concerning the
truth of which he can have no reasonable doubt, which show, as matter of law,
that the court has no jurisdiction, proceeds at his peril in making an arrest in
a civil process, although the want of jurisdiction does not appear on the face
of the process. KNOWLTON, J. dissenting.

TORT, for assault and false imprisonment.    The defendant, a
constable of the city of Boston, justified under a writ issued by
the Municipal Court of said city, in favor of Nels C. Johnson,
described as of Boston, against one Tellefsen, described as master
of the steamship Albert, commorant of said Boston.    The decla-
ration was on an account annexed for work on the steamship.
To the writ was annexed a certificate of a master in chancery
authorizing the arrest, if the arrest was authorized by law.

At the trial in the Superior Court, before *Hopkins*, J., it ap-
peared that the defendant was a duly qualified constable of the
city of Boston; that one Nels C. Johnson, a Norwegian subject,
sued out the writ set up in justification to recover money alleged
to be due to him for services as one of the crew of the steamship
Albert, a Norwegian vessel, of which vessel the plaintiff, a Nor-
wegian subject, was captain; that the steamship was about to
leave port; that Johnson had shipped without signing shipping
papers with the plaintiff, at the port of New York, for the run
to Boston; and that Johnson left the ship at Boston because his
term of service had expired.

It also appeared that the arrest of and the alleged assault
upon the plaintiff were made upon the deck of the vessel while
she was lying at the wharf, the plaintiff being handcuffed; that
the defendant was informed before he made the arrest that the
vessel was a Norwegian one, and that the plaintiff was a Nor-
wegian subject, and was captain of the vessel; and that the claim
of Johnson would be adjusted at the consulate of the Kingdom
of Sweden and Norway in Boston.    It also appeared that the
defendant kept the plaintiff under arrest upon the deck of the
vessel and in the cabin until the plaintiff paid the defendant
under protest the amount claimed to be due to Johnson.

The evidence as to the amount of force used by the defendant,
and as to the character of the arrest, was contradictory.

At the close of the testimony the plaintiff asked the judge to
rule that, by the treaty between the United States and the King-

dom of Sweden and Norway, the plaintiff was exempt from arrest at the time the defendant arrested him, and that the process with which the defendant was armed at the time he made the arrest was not sufficient to justify the defendant in arresting him under the circumstances disclosed in the case, the plaintiff being a Norwegian and upon a Norwegian vessel and in command of it; but the judge refused upon all the evidence so to rule, and ruled that the defendant, under his writ, was justified in making the arrest unless the jury should find that he used excessive force, and instructed the jury as to what would constitute excessive force in a manner not excepted to by the plaintiff. To which ruling and refusal to rule the plaintiff excepted.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

The counsel for the defendant were not the counsel who made the attachment in the original case, and the counsel for the plaintiff did not appear in the case in the Superior Court.

The case was argued at the bar in November, 1895, and afterwards was submitted on briefs to all the justices.

*J. Lowell & E. S. Dodge,* for the plaintiff.

*B. Hall,* (*A. F. Coulter* with him,) for the defendant.

LATHROP, J. The Municipal Court of the city of Boston had no jurisdiction of the action brought against the plaintiff in this case for wages alleged to be due one Johnson, and the writ upon which the plaintiff was arrested on mesne process was of no effect.

By art. 13 of the treaty between the United States and Sweden and Norway of 1827, 8 U. S. Sts. 346, 352, it is provided that " the consuls, vice-consuls, or commercial agents, or the persons duly authorized to supply their places, shall have the right, as such, to sit as judges and arbitrators in such differences as may arise between the captains and crews of the vessels belonging to the nation whose interests are committed to their charge, without the interference of the local authorities, unless the conduct of the crews or of the captain should disturb the order or tranquillity of the country; or the said consuls, vice-consuls, or commercial agents should require their assistance to cause their decisions to be carried into effect or supported. It is, however, understood that this species of judgment, or arbitration, shall not

deprive the contending parties of the right they have to resort, on their return, to the judicial authority of their country."

There are similar treaties with other countries, including one with Prussia in 1828, 8 U. S. Sts. 378, 382. Many of these treaties are referred to in 7 Am. Law Rev. 417. Later treaties have been made with the Netherlands, in 1855, 10 U. S. Sts. 1150, 1155; with Denmark, in 1861, 13 U. S. Sts. 605; with Germany, in 1871, 17 U. S. Sts. 921, 928; and with Italy, in 1878, 20 U. S. Sts. 725, 729.

By art. 6 of the Constitution of the United States, it is declared that "all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

Such a treaty as that with Sweden and Norway has almost uniformly been held to take away all right of action for wages in the courts of this country, by a seaman coming within the scope of the treaty, whether the action be *in rem* or *in personam*. *Norberg* v. *Hillgreu*, 5 N. Y. Legal Obs. 177. *The Elwine Kreplin*, 9 Blatchf. C. C. 438, where the question is considered at length. *The Salomoni*, 29 Fed. Rep. 534. *The Burchard*, 42 Fed. Rep. 608. *The Marie*, 49 Fed. Rep. 286. *The Welhaven*, 55 Fed. Rep. 80.

In *The Amalia*, 3 Fed. Rep. 652, jurisdiction was entertained by Judge Fox of the United States District Court in Maine of a libel against a Swedish vessel, on the ground that there was no consular representative of Sweden in the District of Maine. But this case has no bearing upon the one before us.

An examination of the treaty and authorities above cited makes it plain that the court has no discretion in the matter, and that the local authorities have no right to interfere. Where jurisdiction is given by a treaty to a consul, vice-consul, or a commercial agent, he alone has authority to act in determining in the first instance whether wages are due, and the amount.

It is to be remembered that the United States government has the same right by the treaty in regard to its vessels in Norway; and this right is insisted upon by our government. In the United States Consular Regulations of 1888, p. 25, par. 66, under the

title " Jurisdiction over Disputes between Masters, Officers, and Crews," appears the following: " Exclusive jurisdiction over such disputes in the vessels of the United States, including questions of wages, is conferred by treaties or conventions with " several governments named, and, among them, Sweden and Norway. And on p. 92, par. 273, is also the following : " In many instances, by treaty and consular convention, the United States have secured to their consular officers jurisdiction over questions of wages, shipment, and discharge of seamen."

The bill of exceptions is not so full as it should be as to what occurred on the arrival of the ship in Boston. It is merely said that " Johnson left the ship at Boston because his term of service had expired." It does not appear whether he had been discharged, or had left without permission of the master, though perhaps the more reasonable interpretation of the exceptions is that the statement of the cause of his leaving precludes our assuming other reasons to exist. However this may be, whether he was discharged or not, there was still the question of wages to be determined, and the defendant had been informed before he made the arrest that the claim of Johnson would be adjusted at the consulate of the Kingdom of Sweden and Norway. It seems to us impossible to say that there was not such a difference between the master and Johnson that the consul had not exclusive jurisdiction in the premises.

The facts in the case of *The Elwine Kreplin* are not fully set forth in the report in 9 Blatchf. C. C. 438. But they are found at length in the report of the case in the District Court, 4 Ben. 413. It was there considered by Judge Benedict that the connection of the men with the ship was severed by mutual consent, and that they were entitled to their wages. While this view of the facts was not fully assented to by Judge Woodruff, his opinion was, that although the men were entitled to their discharge and to be paid off, and the master was in the wrong, yet this matter of difference " was left by the treaty in the hands of the consul"; and the libel of the seamen was dismissed.

In *The Burchard*, 42 Fed. Rep. 608, Judge Toulmin dismissed a libel for wages against a German vessel brought by an American seaman who had shipped on board, and who claimed to be entitled to a discharge. He stated, however, that he was in-

clined to take jurisdiction, if the fact had been proved that a discharge had been granted.

In the later case of *The Welhaven*, 55 Fed. Rep. 80, a libel was brought against a Norwegian steamship by a citizen of the United States, for damages and for wages, alleging that he shipped on the vessel at Mobile, for a round voyage to Tampico, and that, on his arrival in Mobile Bay, on the return trip, he was put ashore, manacled, and finally discharged at Mobile, without full pay. On the intervention of the Norwegian consul, claiming jurisdiction, Judge Toulmin sustained the consul's position, and dismissed the libel. The case appears to have been heard on exceptions to the libel, as the judge concludes the opinion thus: " I am, therefore, constrained to sustain the exceptions to the libel, and to order that the libel be dismissed."

It appears, therefore, that the consul of Sweden and Norway had exclusive jurisdiction of the controversy or difference between Johnson and Tellefsen, and that the Municipal Court of the city of Boston had no jurisdiction either of the subject matter or of the persons of the parties in the action which the seaman saw fit to bring against the master. The officer who arrested the master was therefore acting illegally and without justification, and is liable in this action, unless he is protected by virtue of his writ. This presents a question of some difficulty and one which is not wholly free from doubt.

Before proceeding to consider the principal question, it may be well to state briefly certain principles laid down by the courts in regard to which there is little or no dispute.

Where the process is in due form and comes from a court of general jurisdiction over the subject matter, the officer is justified in acting according to its tenor, even if irregularities making the process voidable have previously occurred. *Savacool* v. *Boughton*, 5 Wend. 170. *Earl* v. *Camp*, 16 Wend. 562. *Ela* v. *Shepard*, 32 N. H. 277. *Howard* v. *Proctor*, 7 Gray, 128. *Dwinnels* v. *Boynton*, 3 Allen, 310. *Chase* v. *Ingalls*, 97 Mass. 524. *Hubbard* v. *Garfield*, 102 Mass. 72. *Bergin* v. *Hayward*, 102 Mass. 414. *Rawson* v. *Spencer*, 113 Mass. 40. *Chesebro* v. *Barme*, 163 Mass. 79, 82. *Hines* v. *Chambers*, 29 Minn. 7. *Hann* v. *Lloyd*, 21 Vroom, 1.

Where, however, the process is void on its face, the officer is

not protected. *Clark* v. *Woods*, 2 Exch. 395. *Pearce* v. *Atwood*, 13 Mass. 324. *Eames* v. *Johnson*, 4 Allen, 382. *Thurston* v. *Adams*, 41 Maine, 419. *Harwood* v. *Siphers*, 70 Maine, 464. *Brown* v. *Howard*, 86 Maine, 342. *Rosen* v. *Fischel*, 44 Conn. 371. *Frazier* v. *Turner*, 76 Wis. 562. *Sheldon* v. *Hill*, 33 Mich. 171. *Poulk* v. *Slocum*, 3 Blackf. 421.

An officer is bound to know the law, and to know the jurisdiction of the court whose officer he is ; if, therefore, he does an act in obedience to a precept of the court, and the court has no jurisdiction in the matter, either because the statute under which the court acted is unconstitutional, or there is a want of jurisdiction for any other reason, it would seem that the officer is not protected. There are many authorities to this effect. *Fisher* v. *McGirr*, 1 Gray, 1, 45. *Warren* v. *Kelley*, 80 Maine, 512. *Batchelder* v. *Currier*, 45 N. H. 460. *Thurston* v. *Martin*, 5 Mason, 497. *Campbell* v. *Sherman*, 35 Wis. 103. *Sumner* v. *Beeler*, 50 Ind. 341. *The Marshalsea*, 10 Rep. 68 b. *Crepps* v. *Durden*, Cowp. 640. *Brown* v. *Compton*, 8 T. R. 424. *Watson* v. *Bodell*, 14 M. & W. 57.

Whether this doctrine applies to a case like the present, where the court had general jurisdiction over the subject matter, but no jurisdiction over the particular controversy between the parties, and no jurisdiction over their persons, we need not decide, because on the facts in this case we are of opinion that the officer may be held liable.

He was informed before making the arrest that the vessel was a Norwegian vessel, and the captain of the vessel a Norwegian, and that the claim of Johnson would be adjusted at the consulate of the Kingdom of Sweden and Norway. Being informed of the facts, he was bound to know the law, that the court had no jurisdiction over the person of the captain or the subject matter of the action. *Sprague* v. *Birchard*, 1 Wis. 457, 464, 469. *Grace* v. *Mitchell*, 31 Wis. 533, 539, 545. *Leachman* v. *Dougherty*, 81 Ill. 324, 327, 328.

There are, without doubt, cases which lay down a more stringent rule, and say that the officer need not look beyond his precept, and is not bound to take notice of extrinsic facts ; but all of these are cases which are distinguishable from the case at bar. The leading case on this subject is *People* v. *Warren*, 5

Hill, (N. Y.) 440. The defendant was indicted for assaulting an officer. The inspectors of an election issued a warrant to a constable for the arrest of the defendant, for interrupting the proceedings at the election by disorderly conduct in the presence of the inspectors. The defendant offered to show that he had not been in the presence of the inspectors at any time during the election, and that the constable knew it. This was held to be rightly excluded. The opinion is *per curiam,* and is very brief. While it says that the inspectors had no jurisdiction of the subject matter, yet the clear meaning is, that, if the defendant was not in their presence, they acted in excess of their jurisdiction. Knowledge by an officer that a man was innocent would of course be no excuse for assaulting the officer, if he arrested the man upon a warrant from a court of competent jurisdiction. An officer in a criminal case is obliged to obey his warrant, whatever his knowledge may be. This disposes also of the case of *State* v. *Weed,* 21 N. H. 262.

Several cases have been called to our attention in which there are dicta to the effect that an officer is not bound to look beyond his precept, even if he has knowledge that the court has no jurisdiction; but an examination of these cases shows that the facts known to the officer did not affect the jurisdiction of the court, but related to irregularities in the prior proceedings, or to matters merely of defence to the action. See cases above cited.

Of course, where the court has jurisdiction of the subject matter and of the parties to an action, knowledge on the part of the officer, or information to him that there is some irregularity in the proceeding can make no difference. *Underwood* v. *Robinson,* 106 Mass. 296. Nor can it make any difference that the officer is informed that there is a defence to the action, such as that the defendant has a receipt; *Twitchell* v. *Shaw,* 10 Cush. 46; or a discharge in insolvency; *Wilmarth* v. *Burt,* 7 Met. 257; or that the defendant is an infant; *Cassier* v. *Fales,* 139 Mass. 461.

But the question of jurisdiction is a more serious matter, and if facts are brought to the attention of the officer about which he can have no reasonable doubt, and he knows, or is bound to know, that on these facts the court has no jurisdiction of the controversy, he may well be held to proceed at his peril.

We can see no hardship upon the officer in holding him re-

sponsible in this case for an illegal arrest and for a false imprisonment. If an officer has reasonable cause to doubt the lawfulness of an arrest, he may demand from the plaintiff a bond of indemnity, and so save himself harmless. *Marsh* v. *Gold*, 2 Pick. 285, 290. We are not aware that this case has ever been doubted; and in practice, bonds of indemnity have often been required.

In the case at bar, after receiving full information, he chose to proceed, and, in defiance of the treaty, to subject the subject of a foreign nation to a gross indignity, for the purpose of extorting money from him, under the guise of a precept which the court had no jurisdiction to issue, and which it would not have issued had the facts been before it.

We approve of the language of Mr. Freeman in 21 Am. Dec. 204, where, after a discussion of the cases bearing upon the question of the liability of an officer, he says: "We apprehend, at all events, that the protection of process cannot so far extend as to protect an officer who, from all the circumstances of the case, does not appear to have acted in good faith, and whose conduct shows that his eyes were wilfully closed to enable him not to see and know that he was a too ready instrument in the perpetration of a grievous wrong."

In the opinion of a majority of the court, the instruction requested should have been given.          *Exceptions sustained.*

KNOWLTON, J. It seems to me that the opinion of the majority of the court is wrong in holding that the defendant was bound to receive statements made by the plaintiff or others for the purpose of determining whether he could lawfully serve a writ which was regular in form, and which on its face showed a case within the jurisdiction of the court. The exceptions on this point present a naked proposition of law, and raise no question in regard to the good faith of the defendant in performing his official duty. The writ which he served stated an ordinary case for the collection of a debt. An officer is bound to know the law, even to the extent of determining whether a statute on which his process is founded is or is not constitutional. But for the facts, he is not called upon to take the testimony of anybody in regard to anything outside of the statements contained in the

process, nor even to act upon what he believes to be his own knowledge. The jurisdiction which the court must have in order to justify him is jurisdiction of the case stated in the writ. It . may turn out that there was no real case upon which to issue a writ, and that the prosecution is grossly malicious, or that there is a real case materially different from that stated, and which does not come within the jurisdiction of the court, but the officer is not bound to inquire into matters of this kind. This has been held in a great many cases in Massachusetts and elsewhere, and the reasons for the rule have been elaborately stated in different jurisdictions. These reasons seem to me fully to cover the present case. *Twitchell* v. *Shaw*, 10 Cush. 46. *Wilmarth* v. *Burt*, 7 Met. 257. *Donahoe* v. *Shed*, 8 Met. 326. *Fisher* v. *McGirr*, 1 Gray, 1, 45. *Clarke* v. *May*, 2 Gray, 410. *Chase* v. *Ingalls*, 97 Mass. 524. *Underwood* v. *Robinson*, 106 Mass. 296, 297. *Rawson* v. *Spencer*, 113 Mass. 40, 46. *Cassier* v. *Fales*, 139 Mass. 461. *State* v. *Weed*, 21 N. H. 262. *Batchelder* v. *Currier*, 45 N. H. 460. *Watson* v. *Watson*, 9 Conn. 140. *Warren* v. *Kelley*, 80 Maine, 512, 531. *Earl* v. *Camp*, 16 Wend. 562. *Webber* v. *Gay*, 24 Wend. 485. *People* v. *Warren*, 5 Hill, (N. Y.) 440. *Hann* v. *Lloyd*, 21 Vroom, 1. *Taylor* v. *Alexander*, 6 Ohio, 144, 147. *Henline* v. *Reese*, 54 Ohio St. 599. *Wall* v. *Trumbull*, 16 Mich. 228, 234.

The cases in Wisconsin and Illinois cited in the opinion are the only ones that I have been able to find, after considerable investigation, which hold a different doctrine. On the authorities cited above I am unable to see that it makes any difference whether the outside information communicated to the officer, if taken to be true, would show the real case to be one upon which such a precept cannot properly be issued, because it comes within a treaty giving exclusive jurisdiction to another tribunal, or would show the precept to be unwarranted for any one of numerous other causes. That the defendant in the original action happens to be a captain of a Norwegian ship, and to owe the plaintiff in his official capacity, gives him a privilege of which he may or may not avail himself to take the case out of the general jurisdiction of the court. I think this fact calls for the application of the same principle as a strictly personal privilege. Indeed, the principle of the cases seems to cover every kind of external

fact which operates to take away a jurisdiction that appears to be perfect on the face of the papers.

It has been held that an officer may, if he chooses, act upon his knowledge or information of actual facts which show that the court was without jurisdiction; and refuse to serve the writ. *Earl* v. *Camp*, 16 Wend. 562. *Henline* v. *Reese*, 54 Ohio St. 599. But this is very different from requiring him, at his peril, to determine questions of fact. I think the exceptions should be overruled.