Ex parte ANDERSON.

Ex parte RYNNING.

(District Court, D. Maine. November 25, 1910.)

Nos. 169, 170.

AMBASSADORS AND CONSULS (§ 6*)—POWERS OF CONSULAR OFFICERS—CONTROVERSIES BETWEEN MASTERS AND CREWS OF VESSELS—TREATY WITH NORWAY.

The treaty of July 4, 1827,† between the kingdom of Norway and the United States provides that "the consuls, vice consuls or commercial agents * * * shall have the right as such to sit as judges and arbitrators in such differences as may arise between the captains and crews of the vessels belonging to the nation whose interests are committed to their charge, without the interference of the local authorities,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† 8 Stat. 352, art. 13.

unless the conduct of the crews or of the captain should disturb the order or tranquillity of the country." *Held* that, giving such provision the liberal construction required in case of treaties, it governs in all matters of difference between the captain of a Norwegian vessel lying in a port of the United States, or the officer then in command of the vessel, and members of the crew relating to a matter of the ship's discipline whether the occurrences complained of took place on the vessel or on the wharf at which she lay, and that where all parties concerned were citizens of Norway, and the affair was not of such seriousness as to disturb the public peace, the local courts were without jurisdiction to arrest and detain officers of the ship on warrants issued at the instance of a seaman whether before or after his discharge from the vessel.

[Ed. Note.—For other cases, see Ambassadors and Consuls, Cent. Dig. §§ 16 20; Dec. Dig. § 6.*]

Petitions for writs of habeas corpus by Anders Herman Anderson and Olaf Rynning. Petitioners discharged.

In several petitions, Anders Herman Anderson and Olaf Rynning pray for release from the custody of one John W. Morrill, a deputy sheriff. The facts on which their applications rest are alleged to be substantially as follows:

First. Petitioners are citizens of the kingdom of Norway. Rynning is master, Anderson is second mate, of the Norwegian steamship Skogstad, lying in Portland Harbor in this district.

Second. On November 23, 1910, petitioners were severally imprisoned and restrained of their liberty, and detained in the custody of John W. Morrill, deputy sheriff, acting for the sheriff of the county of Cumberland, and state of Maine.

Third. The said Morrill, as such deputy sheriff, claims to act under the authority of certain writs dated November 22, 1910, commenced by Otto Peterson, commorant at said Portland, and returnable at the superior court, Cumberland county, state of Maine, at the term of said court to be holden on the first Tuesday of December, 1910. The first writ against Rynning alleges an assault committed by him upon Peterson on the 18th day of July, 1910; the second writ against Rynning alleges an unlawful arrest and imprisonment, as well as assault committed by Rynning upon Peterson while Peterson was acting as a seaman on board the steamer Skogstad. The first writ against Anderson alleges an assault committed by him upon Peterson July 18, 1910; the second writ against Anderson alleges an assault upon said Peterson on the same day, together with the arrest and imprisonment of said Peterson at Portland.

Fourth. The steamer Skogstad is alleged to be a vessel, duly registered under the laws of the kingdom of Norway, hailing from Christiana, Norway, owned by citizens of Norway. Otto Peterson shipped on the steamer at Copenhagen, Denmark, on a voyage to the United States, and further if required. He signed shipping articles for a period of 12 months, and not exceeding 15 months. Peterson went aboard the ship in said capacity, and continued in the service until the 1st day of August, 1910, during which time Rynning was master, and Anderson second mate of the steamer. Under the laws of Norway, Anderson, as officer in command, while in command, was in charge of the steamer, and was duly authorized to use such force for preserving discipline on the ship as circumstances required.

Fifth. On the 18th day of July, 1910, the time of the alleged assault and imprisonment of said Otto Peterson, as set forth in the writs, the contract of shipment was in full force; and said Peterson was, at the time of his shipment, and up to and including the commencement of the suits, a citizen of Norway.

Sixth. By virtue of the treaty relations between the government of the United States and the kingdom of Norway adopted on the 4th day of July, 1827, it is provided: "The consuls, vice consuls or commercial agents, or the persons duly authorized to supply their places, shall have the right, as such

to sit as judges and arbitrators in such differences as may arise between the captains and crews of the vessels belonging to the nation whose interests are committed to their charge, without the interference of the local authorities unless the conduct of the crews, or of the captain should disturb the order or tranquillity of the country; or the said consuls, vice consuls or commercial agents should require their assistance to cause their decisions to be carried into effect or supported. It is, however, understood that this species of judgment or arbitration shall not deprive the contending parties of the right they have to resort, on their return, to the judicial authority of their country."

Seventh. The arrest and detention of the petitioners by the said Morrill as said deputy sheriff was unlawful, and contrary to the provisions of the said treaty in that by virtue of the treaty and the laws of the kingdom of Norway, the several causes of action set out in the writ, if any existed, were within the jurisdiction of the vice consul of the kingdom of Norway, residing at Portland in the district of Maine, without the interference of the courts of Maine, or of any other local authorities. And, further, there was, in fact, no assault made by either Rynning or Anderson upon Peterson, and no wrongful or improper imprisonment of Peterson. Whatever did take place on the 18th day of July related wholly to the discipline of the steamship, and those on board of her, and in no way disturbed the order or tranquillity of the United States, or of the state of Maine.

Eighth. The steamer Skogstad is ready to sail from Portland on a voyage to Nova Scotia, where she is under charter to take on a cargo of rails to be carried to British Columbia; and both petitioners are obliged to sail on the steamer, and their detention causes great loss to the owners of the ship; and their restraint is contrary to law and in violation of the treaty.

Upon the filing of the petitions on the morning of November 25, 1910, the court issued a summons to show cause returnable at 11:30 o'clock a. m. the same day, when the respondent, Morrill, appeared, and filed answers to the several petitions, making a substantial denial of everything set up in the petitions, and in matters where explicit denial is not made insisting upon proof, and praying that the writ be refused. In order that the case might be promptly heard the court ordered the writ to issue at once, returnable at three o'clock in the afternoon of the same day, to wit: November 25, 1910; at which time the respondent, Morrill, appeared, bringing with him both Rynning and Anderson, the petitioners in the case. Upon a hearing occupying the afternoon and evening of November 25th, the witnesses in behalf of both parties were heard. After hearing arguments of counsel, the court announced his decision at once.

Benjamin Thompson, for petitioners.
William H. Gulliver, for John W. Morrill.

HALE, District Judge (orally, after stating the facts as above). In view of the circumstances of this case I clearly ought to announce my conclusion at once. By section 753 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 592), the federal courts have power to issue writs of habeas corpus in favor of prisoners, "in custody in violation of the Constitution or a law or treaty of the United States." Are these prisoners, now before me, held in violation of the provisions of the treaty of 1827, between the United States and the kingdom of Norway? They are now in the custody of the sheriff of this county, or one of his deputies, upon writs issued out of the superior court of Cumberland county.

In The Exchange, 7 Cranch, 116, 144, 3 L. Ed. 287, Chief Justice Marshall has pointed out that it would be dangerous to society if the shipowner who sends his ship to the port of another country, for the purposes of trade, did not, as a rule, owe temporary and local alle-

giance to the jurisdiction of the country to which he has sent his vessel; but in the Wildenhus Case, 120 U. S. 1, 7 Sup. Ct. 383, 30 L. Ed. 565, the leading case upon this subject, Chief Justice Waite remarks that it was long ago found to be beneficial to commerce for the local government to abstain from interfering with the internal discipline of a foreign ship, where there are treaty relations between this country and the country in which the ship is owned, and so "by comity it has come to be generally understood among civilized nations that all matters of discipline and all things done on board which affected only the vessel, or those belonging to her, and did not involve the peace or dignity of the country, or the tranquillity of the port, should be left by the local government to be dealt with by the authorities of the nation to which the vessel belonged as the laws of that nation or the interests of its commerce should require."

The treaty of 1827 between Norway and the United States is a part of the law of the United States. I am bound to recognize it as I am bound to recognize any federal law. The captain, Rynning, and the second mate, Anderson, are officers of the Norwegian ship Skogstad. Peterson, the seaman, is a citizen of the kingdom of Norway. Did the master and the second mate deal with Peterson in a manner justifiable, under the discipline of the ship, or did their conduct involve the peace and dignity of the country, and the tranquillity of this port? After a full hearing of the case, in which all the parties in interest have testified and the consul has given his testimony, stating fully his position in the premises, I have no hesitation in deciding that the conduct of the captain with Peterson was such as related simply to the discipline of the ship, and to the maintenance of order on board the ship, as in the case of the Sally and the Newton, cited in the Wildenhus Case from Wheaton's Elements of International Law (3d Ed.) 154.

In the case of Anderson, the second mate, the transactions complained of in the writs upon which these officers were arrested took place largely upon the wharf to which the Skogstad was made fast. Without entering into a discussion of all that took place upon the wharf, I find that whatever the mate did upon the wharf in relation to the seaman was justifiable under his duties as the officer in charge of the ship at the time, in the proper discipline of the ship. Whatever was done upon the wharf did not attain to the gravity which affects the public welfare or requires that the case be taken from the jurisdiction of the ship authorities. It did not, within the meaning of the law, affect the order or tranquillity of the port. Whether it came to the attention of some of the citizens of Portland, or not, it is not material to inquire. It did not relate to matters passing beyond the obvious jurisdiction of the officers of the ship in the maintenance of ship discipline. Tellefsen v. Fee, 168 Mass. 188, 190, 46 N. E. 562, 45 L. R. A. 481, 60 Am. St. Rep. 379; The Welhaven (D. C.) 55 Fed. 80; The Marie (D. C.) 49 Fed. 286; Tucker v. Alexandroff, 183 U. S. 424, 445, 22 Sup. Ct. 195, 46 L. Ed. 264.

The learned counsel for the respondent takes the position that, under the treaty, consuls and vice consuls have the right to sit as judges

and arbitrators only "in such differences as may arise between the captains and crews of the vessels belonging to the nation whose interests are committed to their charge," and that, in the case of Anderson, the difference did not arise between the captain and any member of the crew. In the case before me Anderson was, in fact, acting as the captain of the vessel. He had charge of the vessel at the time. He represented the order and dignity of the vessel in what he did on the wharf, as well as upon the deck of the vessel, on the evening in question, when Peterson was arrested; so that, in fact, the difference did arise literally between the officer in command of the ship and a member of the crew. But I do not take so narrow a view of the treaty as to hold that it is intended to apply to differences which arise between the captain of a vessel, on one side, and the crew, or some member of the crew, upon the other. It clearly refers to such differences as may arise inter sese between the captain and the crew of the vessel; for treaties are to have a liberal construction. Tucker v. Alexandroff, 183 U. S. 424, 437, 22 Sup. Ct. 195, 46 L. Ed. 264.

The counsel for the respondent also urges that at the time the suits were brought, Peterson had been discharged from the ship. But the decisions of the federal courts clearly hold that it makes no difference that, at the time of bringing the actions in the state courts, the seamen had been discharged from the ship; nor is it material that some of the acts complained of were not wholly confined to the ship, but took place on the wharf to which the ship was made fast.

The whole question involved in this controversy is of such importance that I shall be glad to have it receive the attention of the appellate court; and with that in view I shall order that, upon the discharge of the petitioners, bonds shall be given by them. I conclude that this case is governed by the treaty between the United States and the kingdom of Norway; that the matters in controversy are wholly subject to the jurisdiction of the representative of that government, or the courts of that country, and are not within the jurisdiction of the courts of this state.

I order, then, that Olaf Rynning, the master of the steamship Skogstad, and Anders Herman Anderson, the second mate, be discharged from arrest, upon their filing bonds containing the usual provisions, with surety to be approved by the court, in the sum of $700 in each case.