OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

**MARCH TERM, 1912.**

---

MARY C. ADAMS

*v.*

ALFRED ADAMS, JR.

[Argued March 20th, 1911.   Decided April 19th, 1912.]

1. An order to show cause why a defendant should not be attached for contempt adjudicates nothing against him, and is not appealable.

2. A reference to a vice-chancellor of the hearing of an order to show cause why defendant should not be adjudged guilty of a contempt of court, containing instructions to that officer to submit to the chancellor a report of the proceedings had before him and to advise what order should be made thereon, is legally unobjectionable.

3. An allowance of alimony is not a "debt" within the meaning of the constitutional provision forbidding imprisonment for debt, and its payment may be enforced by an attachment for contempt.

4. A decree, made in a suit brought by a wife under the statute to compel her husband to support her, which orders a husband to pay as alimony a sum agreed upon by the parties in open court, is not one to enforce the performance of a contract. The obligation of the husband to support the wife arises out of the marital relation and not out of the agreement between them. Such agreement merely liquidates the amount of money which the wife is entitled to receive for her support.

5. An order adjudging a defendant to be in contempt for non-payment of alimony, and directing his commitment for such contempt, should definitely state the sum of money which he is required to pay in order to purge himself and be discharged from imprisonment.

On appeals from orders made by the court of chancery advised by Vice-Chancellor Leaming.

*Mr. Ulysses G. Styron* and *Mr. Edward A. Armstrong,* for the appellant.

*Messrs. Gaskill & Gaskill,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The complainant, Mary C. Adams, filed a bill against her husband, the defendant, for alimony under the statute. He answered the bill, admitting the marriage, and on the hearing agreed, through his counsel, to have a decree made against him requiring him to pay to the complainant alimony at the rate of $2,500 per year in quarterly installments. A decree was thereupon made, dated the 19th day of September, 1905, reciting this agreement, and adjudging that in pursuance thereof the complainant was entitled to alimony to be paid by the defendant, and that the defendant should pay to the complainant alimony at the rate of $2,500 per year, the same to be paid in quarterly installments in advance; the first payment to be made on the 1st day of October, 1905. Having fallen in arrears in the payments to be made under the decree, the defendant, on the 31st of March, 1909, filed a petition praying to have the amount of alimony adjudged against him reduced. The court refused to consider the applica-

tion so long as the arrears of alimony remained unpaid, and made an order, under date of February 14th, 1910,

"that unless payment of any and all installments of alimony now due and payable, but unpaid, be paid and satisfied by the defendant to the complainant at once, that the necessary proceedings for contempt may be taken out forthwith."

On the 5th day of July, 1910, the complainant applied to the chancellor for an attachment against the defendant, upon the ground that he had failed to pay the arrears of alimony in compliance with the order last referred to. This application was supported by affidavits, and the chancellor thereupon made an order requiring the defendant to show cause why he should not be adjudged guilty of a contempt of court, and why an order should not be made directing a warrant to issue for his commitment because of his refusal

"to obey the order of the court ordering and directing him to pay all alimony then in arrears to the complainant, pursuant to the order or decree made in the cause on the 19th day of September, 1905,"

and referred the hearing on the order to Vice-Chancellor Leaming, with instructions to the vice-chancellor to submit to him a report of the proceedings had before him (the vice-chancellor), and to advise him what order should be made thereon. This order to show cause was immediately appealed from by the defendant. Notwithstanding the appeal, the order was prosecuted to a conclusion before the vice-chancellor, who then reported the proceedings to the chancellor for his consideration, and advised him that an order should be made adjudging the defendant to be guilty of misconduct in failing to pay the arrears of alimony in compliance with the mandate of the order of February 14th, 1910, and directing that he

"stand committed to the common jail of the county of Atlantic, there to remain charged upon this commitment, until he shall have fully complied with the orders of this court touching the payment of said alimony, and shall have paid a fine of $50 for the use of the state, unless the court shall see fit sooner to discharge him, and that a warrant issue against the said Alfred Adams for that purpose."

The chancellor, having received from the vice-chancellor the report of the proceedings before him and his advice as to what action should be taken thereon, made an order in strict accordance with that advice and in the language above quoted. From this order also the defendant has appealed.

The appeal from the order to show cause why the defendant should not be attached for contempt was improvidently taken. No appeal will lie from an order of the court of chancery the purpose of which is to bring a party into court to answer for an alleged contempt. The reason is that it adjudicates nothing against him, and he, therefore, cannot be said to be aggrieved by it; and unless he be aggrieved, he is not entitled to an appeal. Such is the rule declared by this court in *Coryell* v. *Holcombe*, *9 N. J. Eq.* (*1 Stock.*) *650;* and adopted as the basis of decision by this court in *Doland's Case, 69 N. J. Eq.* (*3 Robb.*) *802.*

The appeal from the order to show cause must therefore be dismissed.

The first ground upon which the order adjudging the defendant to be in contempt and directing his commitment to the common jail of the county of Atlantic is attacked is that the reference to the vice-chancellor of the matter for hearing was without warrant of law, for the reason that this officer had no power to hear and adjudicate upon the matter. It is enough, in disposing of this contention, to say that the course pursued was substantially that adopted by the chancellor and approved by this court in the case of *Seastream* v. *New Jersey Exhibition Co., 72 N. J. Eq.* (*2 Buch.*) *377.*

It is further contended that the order is null and void because the decree of September 22d, 1905, is itself a nullity, for the reason that it contains no adjudication that the defendant and complainant were husband and wife; or that the defendant had separated himself from the complainant without justifiable cause and refused and neglected to maintain and support her; or that the amount which he was decreed to pay was suitable for such support and maintenance. We find this contention also to be without merit. The adjudication that the complainant is entitled to alimony to be paid to her by the defendant is, by necessary implication, a finding that the parties are husband and wife, and

that the statutory conditions which authorize the court of chancery to award alimony exist. It does not lie in the mouth of the defendant, after having agreed in open court as to the amount which he should be decreed to pay as alimony to his wife, and induced the court to make a decree on the basis of that agreement, to now assert that the amount was excessive. Much less can he be heard to say that it was insufficient to suitably maintain and provide for his wife.

It is further argued that, even if the validity of the decree for alimony be affirmed, it is not enforceable by an attachment for contempt for failure to perform its mandate, but only by *fieri facias* and process of sequestration. *Aspinwall* v. *Aspinwall, 53 N. J. Eq. (8 Dick.) 684,* is relied upon as authority for this contention. That decision, however, does not support it, in our judgment. The question there before us was whether a decree for the payment of money, *due under a contract between the parties,* was enforceable by process of contempt; and we held that such a method of enforcement of decrees, resting upon such a basis, had been done away with by the constitutional provision abolishing imprisonment for debt on any judgment founded upon contract, and that this was recognized by the legislative enactments for the enforcement of such decrees which were referred to in the opinion. That the decision was not intended to have the scope attributed to it by defendant's counsel would seem to have been assumed by this court in its opinion in *Jernee* v. *Jernee, 54 N. J. Eq. (9 Dick.) 657,* decided only two terms later, in which a commitment by the court of chancery for contempt in failing to comply with a decree directing the payment of alimony was set aside, not for lack of power in the court to make the order of commitment, but because of the failure to specify in the commitment the amount of money which the defendant was required to pay in order to entitle him to a discharge from imprisonment. Such a disposition of the case, so soon after the decision in *Aspinwall* v. *Aspinwall,* can only be accounted for upon the theory that the commitment of a defendant for contempt for disobedience of a decree commanding him to pay alimony was not considered by the court to be a violation of the constitutional provision prohibiting imprisonment for debt.

The question whether the enforcement of decrees for the payment of alimony, by attachment for contempt, is prohibited by statutory or constitutional provisions forbidding imprisonment for debt, has frequently received consideration in the courts of our sister states; and the great weight of authority is that an allowance of alimony is not a debt within the meaning of such provisions, and that an order for the enforcement of its payment by attachment for contempt does not violate them. *Murray* v. *Murray, 84 Ala. 363; Ex parte Perkins, 18 Cal. 60; Lyon* v. *Lyon, 21 Conn. 185; Carlton* v. *Carlton, 44 Ga. 216; Wightman* v. *Wightman, 45 Ill. 167; Chase* v. *Ingalls, 97 Mass. 524; Hurd* v. *Hurd, 63 Minn. 443; Pain* v. *Pain, 80 N. C. 322; Sheafe* v. *Sheafe, 36 N. H. 155; Andrew* v. *Andrew, 62 Vt. 495.* We concur in this view, and hold that the order now under consideration cannot be reversed upon the ground just discussed.

It is suggested that the present decree is for the payment of money due under a contract between the parties, and so is within the very letter of the decision in the *Aspinwall Case*. But this is clearly not so. In the *Aspinwall Case* the complainant sought to compel the performance of a contract previously entered into by herself and her husband, one of the provisions of which required the payment of a certain sum of money by him to her at stated intervals. In the present case, the bill was filed to compel the performance by the defendant of the marital duty which he owed his wife of providing for her support. The contract between them, made upon the hearing, did not create the obligation, but merely liquidated the amount of money which he should pay her from time to time in discharge thereof.

Lastly, it is argued that this order is invalid because it fails to specify the amount which the defendant is required to pay in order to purge his contempt. It will be perceived from the recital of the various orders which followed the making of a final decree, in September, 1905, that at no time was there any ascertainment or adjudication by the court of chancery of the amount of alimony which was in arrears. The order of February 14th, 1910, which is the foundation of the contempt proceedings, provides that

"unless payment of any and all installments of alimony now due and payable, but unpaid, be paid and satisfied by the defendant to the complainant at once,"

contempt proceedings may be instituted; but contains no ascertainment and determination as to what installments are due, or how much money the defendant shall pay in order to avoid being proceeded against for contempt. The order to show cause is likewise silent upon this point, merely directing that the defendant should show cause why he should not be adjudged guilty of a contempt of court, and why an order should not be made directing a warrant to issue for his commitment

"because he has refused to obey the order of the court made on the 14th day of February, then last past, ordering and directing him to pay all alimony then in arrears to the complainant."

What has been said with relation to these two orders is also true with relation to the order adjudging the defendant to be in contempt and directing his commitment to the common jail of Atlantic county. That order recites that the defendant has not complied with the order, or decree, of February 14th, then last past, and has not paid to the complainant any of the alimony then in arrear and ordered to be paid, and then directs that the defendant stand committed to the common jail of the county of Atlantic, there to remain until he shall have fully complied with the orders of the court of chancery touching the payment of the alimony, and shall have paid a fine of $50 for the use of the state.

In the case of *Jernee* v. *Jernee, supra,* the defendant had been committed to the county jail of Middlesex county for contempt on account of his failure to pay alimony. The warrant, after the usual recitals, contained the following order:

"Therefore, we command you that you take the body of the said William R. Jernee, and him safely and closely keep in your custody in the common jail of the county of Middlesex until he shall have paid to the said complainant the alimony now due her, and the costs of such contempt to be taxed; and also a fine ($5) for the use of the state, together with the costs of this writ, or until our said court shall make order to the contrary."

Application was made to the court of chancery for the discharge of the defendant upon the ground that this commitment was fatally defective, inasmuch as neither it nor the order that authorized it specified the amount of the alimony to be paid. The application was refused upon the ground that it was the proper practice in such cases for the defendant to secure his discharge by an application to the court, upon satisfying the court that he had purged his contempt. Upon an appeal to this court from the order refusing his discharge, it was held that the defendant's right to be released from imprisonment was complete upon his complying with the order, *i. e.*, upon payment of the alimony in arrears. We there said: "The punishment for the contempt has already been determined and announced, and the method of purgation has also been made known. Why should the contemner be again set before the court? The only result would be a reiteration of the existing mandate to pay the fine, the alimony and the costs, and then go free. Besides, this recurrence to the court is inconsistent with the command of the writ, which did not direct the bringing in the appellant for further judgment, but simply his imprisonment until he had paid certain moneys. There was no order that he should be confined until he should be again placed before the chancellor, and his imprisonment for such a purpose would, therefore, have been obviously illegal. \* \* \* The sole purpose of the process was to enforce the right that had been adjudged in favor of the respondent in this appeal, and such a writ is, in substance, not to be distinguished from a *capias ad satisfaciendum* founded on a judgment at law. There seems to be no good reason why the moneys to be levied by them respectively should not be definitely stated as well in the one case as in the other. Our conclusion is that the appellant was entitled to a discharge from imprisonment upon the payment by him of the alimony, fine and costs, and that to effectuate that right it was necessary that the amounts so to be paid should have been specified in the warrant of commitment. There being a defect in this particular, the decree before us must be reversed."

Although the matter presented for decision in the case cited related to the contents of the warrant of commitment, the reasoning of it would seem to apply equally to the order directing

the commitment to issue, for that order is final in its character, and reserves nothing for future hearing and determination. Its mandate is that the warrant of commitment shall issue, and it practically declares the terms which must be complied with by the defendant in order to be discharged from imprisonment under the warrant. In the *Jernee Case* we held that the defendant was not obliged to present himself to the court and satisfy it that he had complied with the order which he had been charged with contemning, but that he was entitled to be released from custody by the sheriff upon payment to that officer of the sum of money mentioned in the warrant of commitment. It would seem to be equally his right to avoid incarceration by paying to the complainant, or into court, the amount of money which the order for commitment required him to pay as a prerequisite to his release. As the matter now stands, the defendant is subject to be confined in the county jail of Atlantic county for an indefinite period, without ability to purge himself of his contempt, until the court of chancery shall see fit, at some subsequent time, to ascertain the exact amount of alimony in arrears at the time of the making of the order of February 14th, 1910, and shall advise him of the amount so ascertained.

We conclude, therefore, that so much of the order of July 11th, 1910, as directs that the defendant stand committed to the common jail of the county of Atlantic until he shall have fully complied with the orders of the court of chancery touching the payment of alimony, is invalid and must be reversed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Swayze, Trenchard, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Congdon—10.